171 N.J. Super. 193 (1979)
408 A.2d 450
MIRIAM KISS, PETITIONER-APPELLANT,
v.
DEPARTMENT OF COMMUNITY AFFAIRS, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted October 22, 1979.
Decided November 14, 1979.
*194 Before Judges BISCHOFF, BOTTER and DWYER.
Ms. Joyce M. Usiskin, attorney for appellant.
Mr. John J. Degnan, Attorney General of New Jersey, attorney for respondent (Ms. Erminie L. Conley, Assistant Attorney General, of counsel; Mr. Dennis J. Krumholz, Deputy Attorney General, on the brief).
*195 BY THE COURT.
This is a case of alleged employment discrimination in which petitioner charges the Department of Community Affairs (hereafter Community Affairs) refused to hire her as a principal planner in the local planning unit because of her sex. Both parties agree that petitioner meets all the educational and experience requirements of the position, and that she achieved the highest score of all candidates who took the required qualifying Civil Service examination.
On the two Civil Service certification lists at issue, dated February 19, 1976 and August 18, 1976, respectively, petitioner ranked first, but with respect to the February 19, 1976 list, she was bypassed in favor of a male Community Affairs employee and was bypassed as to the August 18, 1976 list by two lower-ranking males with work experience allegedly superior to petitioner's. The bypassing of petitioner, despite her placement at the top of the lists, was the result of the Department's exercise of the "Rule of Three," N.J.S.A. 11:10-6. That rule permits the appointing authority to select from among three top-ranking individuals on a certified list. McGlinchey v. Martin, 12 N.J. Misc. 188, 189, 170 A. 848 (Sup.Ct. 1933). See, also, N.J.S.A. 11:22-16; Marranca v. Harbo, 41 N.J. 569, 576 (1964). When the Rule of Three is exercised the appointing authority must submit to the Department of Civil Service (hereafter Civil Service) a statement of the reasons for the appointment and must certify under oath that it is not based on discriminatory motive. N.J.S.A. 11:10-6.1. We assume, although the record does not so indicate, that Community Affairs complied with N.J.S.A. 11:10-6.1.
Petitioner was interviewed once, after publication of the August 18, 1976 list by McGuirk, head of the local planning unit, and was recommended for "further consideration," meaning she qualified for the position. She was rejected by Goldberg, the Administrator of the Department, who had observed her during his prior acquaintance with her. Kiss later filed a complaint *196 with the Civil Service Commission Affirmative Action Office, alleging sex discrimination in hiring by Community Affairs.
At a hearing on the complaint, the hearing officer decided that Goldberg was the most credible of the witnesses and that petitioner's rejection was based on a proper exercise of the Rule of Three  not on improper discriminatory motives. The hearing officer's findings and conclusions were adopted by the Civil Service Commission. Petitioner then filed this appeal alleging, as she did below, that she was passed over because of sexual bias; that she had been questioned improperly during the employment interview about her marital status, and that Community Affairs evidenced a policy of sex discrimination in employment. A preliminary inquiry is whether petitioner's claim of sex discrimination should be determined by reference to the Law Against Discrimination, N.J.S.A. 10:1-1 et seq., as petitioner contends, or under the Rule of Three, N.J.S.A. 11:10-6 et seq., as respondent contends. Respondent argues that because petitioner filed her claim with Civil Service rather than with the Division of Civil Rights, Civil Service law controls and it has no jurisdiction or duty to enforce the Law Against Discrimination.
We believe Civil Service misconstrues its role. Respondent's reasoning appears to be that Civil Service, and by implication Community Affairs, are not subject to the Law Against Discrimination. That reasoning contravenes the statute which clearly states:
It shall be an unlawful employment practice, or, as the case may be, an unlawful discrimination:
a. For an employer, because of race ... or sex of any individual . . to refuse to hire or employ ... such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.... [N.J.S.A. 10:5-12.]
N.J.S.A. 10:5-5(e) defines employer:
"Employer" includes all persons as defined in subsection a. of this section unless otherwise specifically exempt under another section of this act, and includes the *197 State, any political or civil subdivision thereof, and all public officers, agencies, boards or bodies. [Emphasis supplied]
It is clear from the foregoing definition that state subdivisions, such as Civil Service and Community Affairs, are prohibited from discriminating in employment. And, if an instance of discrimination by a state agency does occur, the discriminatee must have a means of redress. General redress was provided by the Legislature in N.J.S.A. 10:5-6, which states in pertinent part:
There is created in the Department of Law and Public Safety a division known as "The Division on Civil Rights" with power to prevent and eliminate discrimination in the manner prohibited by this act against persons because of ... sex ... by employers, labor organizations, employment agencies or other persons ... and the division created hereunder is given general jurisdiction and authority for such purposes.
Specific redress of sex discrimination in civil service employment was provided by the Legislature in two statutes: N.J.S.A. 11:17-1, prohibiting, among other things, sex discrimination in civil service employment and questioning about marital status, and N.J.S.A. 11:10-6.1, prohibiting discriminatory use of the Rule of Three.
These proscriptions of sex discrimination are enforceable under two additional Civil Service statutes. First, N.J.S.A. 11:1-7(a) empowers Civil Service to make and enforce "rules and regulations for carrying into effect the provisions of this title," and N.J.S.A. 11:1-7(d) empowers Civil Service to "secure compliance [with its rules and regulations] and for that purpose may ... bring such suits or actions, either at law or in equity as may be necessary and appropriate...." Second, N.J.S.A. 11:5-1 lists the following among the duties Civil Service must perform:
........
c. Make investigations either on petition of a citizen or of its own motion concerning matters pertaining to the enforcement and effect of this subtitle; *198 require observance of its provisions and the rules and regulations adopted thereunder, and make such investigations as may be requested by the Governor or the Legislature, and report thereon;
d. Hear appeals, either as a body or through one or more members designated by a majority thereof to hear such appeals, of persons in the classified service sought to be removed, demoted in pay or position, suspended, fined or otherwise discriminated against contrary to the provisions of this subtitle, and render decisions thereon and require observance of the decisions as herein provided....
In addition, Civil Service had the broad authority to exercise powers which "by fair implication and intendment are incident to the powers expressly conferred." Tanis v. Passaic Cty., 126 N.J.L. 303, 305 (E. & A. 1941); Newark v. Civil Service Comm'n, 115 N.J.L. 26, 29 (Sup.Ct. 1935).
Although the Law Against Discrimination vests the Division on Civil Rights "with power to prevent and eliminate discrimination in the manner prohibited by this act ...," N.J.S.A. 10:5-6, the statute does not specify that Civil Rights has exclusive jurisdiction to enforce the act or exclusive jurisdiction over all instances of discrimination. In Hinfey v. Matawan Regional Bd. of Ed., 77 N.J. 514 (1978), our Supreme Court, in a sex discrimination case, sanctioned the exercise of concurrent jurisdiction by Civil Rights and the Department of Education. Id. at 520. Concurrent jurisdiction by two state agencies was also upheld by this court in Hackensack v. Winner, 162 N.J. Super. 1 (App.Div. 1978).
In the instant case petitioner could appropriately have filed a claim either with Civil Rights or Civil Service. She chose the latter, relying upon Civil Service laws which prohibit sex discrimination, N.J.S.A. 11:17-1, and empower the Civil Service Commission to hear appeals of persons who have been discriminated against contrary to the provisions of N.J.S.A. 11:5-1(d) (quoted above). Her reliance upon these laws and upon Civil Service's statutory obligation as an employer under N.J.S.A. 10:5-5(e) and N.J.S.A. 10:5-12 not to discriminate in employment *199 is not unjustified or unreasonable. Rejected for employment by a state agency, petitioner turned to Civil Service, the regulator of state services, seeking the relief which its own rules embody.
We turn to a consideration of the merits of petitioner's claim of discrimination. The test established in Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55 (1978), is based on the three-pronged procedure outlined to show racial discrimination in McDonnell-Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and requires, as the first prong, an initial presentation by the claimant of a four-part prima facie case:
The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications. [411 U.S. at 802, 93 S.Ct. at 1824.]
As the second prong of the test, the burden shifts to the employer to articulate a nondiscriminatory reason for the claimant's rejection. And, as the third prong, the burden shifts back to the claimant who may demonstrate that the employer's reason is a pretext for the prohibited discrimination. 77 N.J. at 82-83.
Petitioner successfully presented a prima facie case of discrimination. She showed: (1) she is a woman and therefore a member of a protected group; (2) she applied for the position of principal planner, for which she is qualified: (3) she was rejected after publication of each certified list at issue, and (4) the position remained open and Community Affairs continued to seek other applicants "from persons of complainant's qualifications."
The next question is whether respondent has come forward with a legitimate nondiscriminatory reason for the failure to *200 appoint petitioner. Peper v. Princeton Univ. Bd. of Trustees, supra, 77 N.J. at 83. The Civil Service Commission concluded that petitioner's failure to be appointed to the position of principal planner was not based on her sex or any other prohibited reason under N.J.S.A. 10:5-12, and affirmed the action of the appointing authority.
The hearing officer properly identified the central issue presented at the hearing as:
[W]hether the appointing authority participated in sex discrimination practices in failing to hire Appellant from a Civil Service Certification List for the position of Principal Planner.
His relevant findings of fact were:
........
Appellant was not appointed because the appointing authority exercised its right to invoke and appoint on the basis of the "Rule of Three".
No evidence was presented that the manner of invocation of the "Rule of Three" was not properly utilized in this instance or departed from usage as to other instances.
........
There was no intent or motive on the part of the appointing authority to not appoint appellant because of her sex, or N.J.S.A. 10:5-12.
In his report the hearing officer said:
Probably the most candid witness offered by either party to the proceedings was Howard Goldberg, the Director of Administration for the Community Affairs Department. Goldberg testified that he recommended the appellant not be appointed because he questioned the ability of appellant to deal with the public, project a desired image and felt she was too eccentric in her ways for the Department.
The record discloses that Howard Goldberg testified he was the final step in virtually all personnel matters in the Department. When the paperwork concerning petitioner came to his desk, he knew her application had the approval of the personnel *201 and fiscal offices, but it was still his judgment that it was not appropriate to appoint her to the position. His acquaintance with petitioner went back to 1968, at which time their relationship was not professional. It was more of a "passing in the hallway" or social talk relationship. He recognized petitioner as being competent at her assigned job, which at that time involved inside work. However, the position for which petitioner had applied, principal planner, required her to work with the public in groups or teams out in the municipalities.
In his opinion petitioner would not be able to project the desired department image to the municipalities. He also believed petitioner to be eccentric and to have quirks that were not in the best interests of the Department, one example being that she carried her lunch in a child's lunch box decorated with Walt Disney characters. While we find nothing in the record to disqualify petitioner or cast doubt on her ability to properly perform the duties of the position, we must recognize also the broad discretion accorded an employer in exercising the right of fair selection under the Civil Service Rule of Three.
The hearing on this claim took two full days. Ten witnesses testified and sharp issues of credibility were presented. In such a situation the "conscientious conclusions of the trier of the facts as to which witnesses were more worthy of belief must be given great weight and accepted by the appellate tribunal unless clearly lacking reasonable support." Abeles v. Adams Engineering Co., Inc., 35 N.J. 411, 427 (1961).
The scope of our review of determinations of administrative agencies calls "for a careful and principled consideration of the agency record" to determine "[if] the findings made could reasonably have been reached on sufficient credible evidence in the record." Mayflower Securities v. Bureau of Securities, 64 N.J. 85, 92-93 (1973). If the findings and conclusions of the administrative agency are thus supported, then affirmance is *202 mandated. Id.; In re Application of Howard Savings Bank, 143 N.J. Super. 1, 10 (App.Div. 1976).
After our careful analysis of this record, we are strongly of the view that the Civil Service Commission was fully justified in concluding that the Rule of Three was properly utilized and that the appointing authority did not participate in unlawful discrimination by failing to appoint petitioner to the position of principal planner.
Affirmed.