179 N.J. Super. 496 (1981)
432 A.2d 572
NANCY LLOYD, PLAINTIFF,
v.
BOROUGH OF STONE HARBOR, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Chancery Division Cape May County.
Decided April 1, 1981.
*505 W.M. Balliette, Jr. for defendant (Cafiero & Balliette, attorneys).
Robert L. Taylor for plaintiff (Way, Way, Goodkin & Taylor, attorneys).
HAINES, J.S.C.
This suit claims sex discrimination in connection with employment. Plaintiff has ignored all statutory remedies and relies entirely upon alleged violations of the New Jersey and the United States Constitutions as a basis for her claims.
Nancy Lloyd was appointed a special police officer by defendant Borough of Stone Harbor on September 8, 1973. She acted as a full-time dispatcher for its police department until May 8, 1977 when she became a part-time dispatcher. On August 28, 1978 she resigned. While serving as a special officer she received *506 weapons training and occasionally participated in narcotic raids involving female suspects. She also processed female prisoners for the department.
In July 1974 the police department received applications from Nancy Lloyd and others for employment as regular police officers. The Public Safety Committee of Stone Harbor, consisting of three members of the borough council, met in December 1974 to consider them. About 20 persons had applied for two job openings. Lloyd's background made her a strong candidate for the job; among other things, she was a graduate of the University of Tampa, from which she received an associate's degree in sociology with emphasis upon criminology. The chief of police and three sergeants attended the meeting and discussed the various applications. About ten of them, including Nancy Lloyd's were rejected at the initial meeting. The choices were narrowed further at subsequent meetings and on January 24, 1975 the committee recommended two male applicants for the positions, a recommendation which was accepted by the borough council.
Nancy Lloyd's husband, Daniel Lloyd, was a regular police officer in Stone Harbor. On June 2, 1977 he was served with written charges involving a claimed breach of disciplinary rules. On the next day plaintiff filed a second application for employment as a regular police officer, a position for which there were two openings. In September of that year the Public Safety Committee considered Lloyd's application and others. Her application was rejected; two male applicants were employed. On January 3, 1978 a third male was hired as a regular police officer.
Plaintiff filed this suit on August 16, 1978. She seeks damages by way of back pay and a mandatory injunction directing the defendants to employ her as a regular police officer.

A. The Constitutional Provisions
The Fourteenth Amendment to the Federal Constitution provides, in part:

*507 No state shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
Art. I, ¶ 1 and ¶ 5 of the New Jersey Constitution, (1947) provide like rights.
Paragraph 1 states that
All persons are by nature free and independent and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property, and of pursuing and obtaining safety and happiness.
Paragraph 5 states that
No person shall be denied the enjoyment of any civil or military right, nor be discriminated against in the exercise of any civil or military right, nor be segregated in the militia or in the public schools, because of religious principles, race, color, ancestry or national origin.
This court has the power to enforce these constitutional rights, whether or not implementing legislation has been adopted. Bivens v. Six Unknown Named Agents, 403 U.S. 388, 393, 91 S.Ct. 1999, 2003, 29 L.Ed.2d 619 (1971); Peper v. Princeton University, 77 N.J. 55, 76 (1978); T & M Homes v. Mansfield, 162 N.J. Super. 497, 505-506 (Law Div. 1978).
Plaintiff claims that her constitutional right to be free of discriminatory employment practices has been invaded. That claim involves a property right. Peper v. Princeton, supra at 79-80. Like all property rights, it is not absolute, but is subject to the reasonable exercise of the police power. David v. Vesta Co., 45 N.J. 301, 311 (1965). "Equally fundamental with the private right is that of the public to regulate it in the common interest". Nebbia v. New York, 291 U.S. 502, 523, 54 S.Ct. 505, 510, 78 L.Ed. 940 (1934). Thus, time and procedural restrictions may be placed upon the exercise of constitutional rights; they will not be invalidated so long as they are reasonable. State v. McKnight, 52 N.J. 35, 48 (1968); State v. Boyd, 165 N.J. Super. 304, 309, (App.Div. 1979); Montville v. Block 69, 74 N.J. 1, 8 (1977); State v. Schmid, 84 N.J. 535, 561 (1980). However, a state statute which frustrates the enforcement of a federal right *508 is invalid. Hampton v. Chicago, 484 F.2d 602, 607 (7 Cir.1973), cert. den. 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974).

B. Exhaustion Requirements

(1) State Remedies; The Law Against Discrimination

Nancy Lloyd was not obliged to proceed with a direct constitutional suit. She could have proceeded under N.J.S.A. 10:5-1 et seq., the Law Against Discrimination, which provides:
All persons shall have the opportunity to obtain employment ... without discrimination because of... sex.... [N.J.S.A. 10:5-4]
Her failure to pursue this remedy invited the defense contention that her suit is barred since, as a general rule, a suit will not be entertained unless administrative remedies have been exhausted. Playcrafters v. Teaneck, 177 N.J. Super. 66, 73 (App.Div. 1981); Garrow v. Elizabeth General Hospital, 79 N.J. 549, 561-562 (1979). However our courts have held that the remedies provided by the Law Against Discrimination are not exclusive. In Kiss v. Community Affairs Dep't, 171 N.J. Super. 193, 198 (App.Div. 1979), a discrimination suit was entertained under the Civil Service Act although the discrimination statute was available. Gray v. Serruto, 110 N.J. Super. 297, 306-307 (Ch. 1970), held that a discrimination suit based directly upon the New Jersey Constitution was maintainable, although it ignored available administrative procedures. The statute itself provides in § 27 that
... nothing herein contained shall bar, exclude, or otherwise affect any right or action, civil or criminal, which may exist independently of any right to redress against or specific relief from any unlawful employment practice or unlawful discrimination.
Consequently, plaintiff's failure to invoke the Law Against Discrimination is no bar to this suit, under the State Constitution. For the same reason, the suit based upon the Federal Constitution is not barred.
There is an additional reason which denies application of the exhaustion requirement to a federal constitutional civil rights suit when that requirement addresses state remedies. *509 The United States Supreme Court and other federal courts have held expressly that state administrative remedies need not be exhausted in connection with suits brought under the federal Civil Rights Act, 42 U.S.C.A. § 1983. In Ellis v. Dyson, 421 U.S. 426, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975) the Court said:
Exhaustion of state judicial or administrative remedies ... was ruled not to be necessary, for we have long held that an action under § 1983 is free of that requirement. [at 432-433, 95 S.Ct. at 1695]
To the same effect are: McNeese v. Board of Education, 373 U.S. 668, 671, 83 S.Ct. 1433, 1435, 10 L.Ed.2d 622 (1963); Damico v. California, 389 U.S. 416, 417, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); King v. Smith, 392 U.S. 309, 312, 88 S.Ct. 2128, 2130, 20 L.Ed.2d 1118 (1968); Hochman v. Board of Education, 534 F.2d 1094, 1097 (3 Cir.1976); but see, Patsy v. Florida International Univ., 634 F.2d 900 (5 Cir.1981). If § 1983 suits may be maintained while ignoring available state remedies, it necessarily follows that suits brought directly under the United States Constitution are free of the exhaustion requirement.

(2) Federal Remedies; Title VII of the Civil Rights Act

(a) The New Jersey Constitution

Under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e-1, an employer may not discriminate with respect to privileges of employment on the basis of sex. Plaintiff could have invoked that act in this court or in a federal court, Peper v. Princeton Univ., supra 77 N.J. at 74, provided she first filed a charge with the Equal Employment Opportunity Commission pursuant to 42 U.S.C.A. § 2000e-5(e). She did not undertake this route and therefore failed to utilize an available administrative remedy. Peper, at 73-76, 389 A.2d 465, held that this failure prevented a suit in our courts under Title VII. Nevertheless, it permitted the maintenance of a suit brought directly under the New Jersey Constitution. It follows, therefore, that Nancy Lloyd's suit under our Constitution is not affected by the failure to pursue her available federal administrative remedy.

*510 (b) The United States Constitution

Federal courts will not permit a suit to be brought under Title VII of the Civil Rights Act unless EEOC proceedings have been exhausted. United Airlines v. Evans, 431 U.S. 553, 556, 97 S.Ct. 1885, 1888, 52 L.Ed.2d 571 (1977); Wetzel v. Liberty Mutual Ins. Co., 508 F.2d 239, 246 n. 8 (3 Cir.1975), cert. den. 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975). Plaintiff did not undertake those proceedings and therefore could not have proceeded with a Title VII suit in a federal District Court. Should she nevertheless be permitted to maintain a direct action in a New Jersey Court under the United States Constitution?
The United States Supreme Court recognized the right to bring a direct constitutional suit in Bivens, supra. In doing so it suggested that the suit might not have been allowed if Congress had provided an equally effective statutory remedy. 403 U.S. at 397, 91 S.Ct. at 2005. In a concurring opinion in Monell v. New York, 436 U.S. 658, 713, 98 S.Ct. 2018, 2047, 56 L.Ed.2d 611 (1978), Justice Powell said that civil rights suits against municipalities should be limited to those brought under the Civil Rights Act; since Monell established the liability of municipalities under that act, there was no longer any reason to constitutionalize the cause of action. This is doubly true since Owen v. City of Independence, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), was decided. It held that municipalities are not entitled to any form of immunity from suit under the act. In Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978), the Court also said:
The presence or absence of Congressional authorization for suits against federal officials is of course relevant to the question of whether to infer a right of action for damages for a particular violation of the Constitution. In Bivens, the Court noted the "absence of affirmative action by Congress" and therefore looked for special factors counselling hesitation. [at 504, 98 S.Ct. at 2909.]
Furthermore, Congress has encouraged the use of the Civil Rights Act by providing for an allowance of attorneys' fees to successful plaintiffs. 42 U.S.C.A. § 1988. In 1979 the Supreme Court's suggestions were adopted in Turpin v. Mailet, 591 F.2d *511 426, 427 (2 Cir.1979), which held that a direct constitutional suit was no longer available since the Civil Rights Act provided an adequate remedy. When this history is coupled with federal exhaustion requirements applying to Title VII suits, it becomes apparent that plaintiff, who had an adequate Title VII remedy available, should not be permitted to institute an action under the Federal Constitution.
There are other good reasons not to permit a direct constitutional suit when the Civil Rights Act is available to a plaintiff. The act has been interpreted in a multitude of cases so that courts and litigants have considerable guidance available when considering its application. That is not true in the case of a Bivens suit. For example, no court has considered the question of what, if any, statutes of limitation or exhaustion theories apply to federal constitutional claims. The contrary is true with respect to suits under the act. Further, as discussed below, § 1983 rules should be applied in Bivens actions, making the latter redundant. Butz v. Economou, supra 438 U.S. at 500-501, 98 S.Ct. at 2907-2908.

C. Notice Requirements; The Tort Claims Act
Plaintiff's right to be protected against discriminatory employment practices is a property right. Peper v. Princeton, supra 77 N.J. at 79-80. She sues for an interference with that right, claiming a "constitutional tort." Tort claims against municipalities are governed by the New Jersey Tort Claims Act, N.J.S.A. 59:1-1 et seq. This act bars a recovery against a public entity (but not a public employee) unless a claim is filed with the entity within 90 days of its accrual. N.J.S.A. 59:8-8. Does this restriction apply to a constitutional suit?

(1) The New Jersey Constitution

The Tort Claims Act provides that public entities are liable for "injury" caused by a public employee under certain circumstances. N.J.S.A. 59:2-2. An "injury" is defined under N.J.S.A. 59:1-3 as follows:

*512 "Injury" means death, injury to a person, damage to or loss of property or any other injury that a person may suffer that would be actionable if inflicted by a private person.
This broad language includes damage caused by a violation of constitutional rights.
The notice provision of the act is not unreasonable. It provides municipalities with an opportunity for the prompt investigation and settlement of claims. It has withstood the contention that it denies the equal protection of law demanded by our Constitution. Fuller v. Rutgers, 154 N.J. Super. 420, 427 (App.Div. 1977). I find that plaintiff's claim, based upon the New Jersey Constitution, is subject to the notice requirement imposed by the act. She has failed to give notice and her damage claim against Stone Harbor must therefore be dismissed.
Plaintiff's claim for reinstatement, however, survives; the Tort Claims Act provides that it does not affect "the right to obtain relief other than damages". N.J.S.A. 59:1-4. Further, the claim against the individual defendants is not subject to the notice requirement because the Act does not so provide.

(2) The United States Constitution

Federal courts refuse to recognize notice of claim provisions in suits brought under the federal Civil Rights Act. Donovan v. Reinbold, 433 F.2d 738 (9 Cir.1970); Paschall v. Mayone, 454 F. Supp. 1289, 1298 (S.D.N.Y. 1978); Gipson v. Bass River, 82 F.R.D. 122, 126-127 (D.C.N.J. 1979) (expressly denying the application of the notice provision in the New Jersey Tort Claims Act to a § 1983 suit). There is less reason to apply a state statute to an action brought directly under the Federal Constitution. Plaintiff's suit under that Constitution is therefore unaffected by her failure to give the notice required by the Tort Claims Act.

*513 D. Statutes of Limitation
No case has been found which considers the question of limitation periods for direct constitutional suits. Decisions under § 1983 of the federal Civil Rights Act provide a helpful analogy, the validity of which is apparent from the decision of the United States Supreme Court in Butz v. Economou, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978). In that case, the court held (at 501, 98 S.Ct. at 2908) that there is no basis for according federal officials a higher degree of immunity from liability when sued directly for constitutional infringement than that provided state officials when they are sued for identical violations under § 1983. In Ellis v. Blum, 643 F.2d 68 (2 Cir.1981), the court found no reason for a different rule of damages when a due process claim is brought directly under the Federal Constitution instead of a statute such as § 1983. It noted a "general trend" in appellate courts to incorporate § 1983 law into Bivens suits. These authorities and the logic of having like rules for like suits require the application of state statutes of limitation to federal constitutional suits in the same way they are applied in suits commenced under the federal Civil Rights Act.
It is now clear that the most appropriate state statute of limitations will be applied in § 1983 suits brought in a federal court. Board of Regents v. Tomanio, 446 U.S. 478, 100 S.Ct. 1790, 64 L.Ed.2d 440 (1980); Johnson v. Rwy. Express Agency, 421 U.S. 454, 462, 95 S.Ct. 1716, 1721, 44 L.Ed.2d 295 (1978); Polite v. Diehl, 507 F.2d 119, 122 (3d Cir.1974). In Tuma v. American Can Co., 367 F. Supp. 1178, 1183 (D.N.J. 1973), the court applied N.J.S.A. 2A:14-1, New Jersey's six-year statute dealing with injuries to property, in a sex discrimination suit under the Civil Rights Act without considering the provisions of our Tort Claims Act. Kyriazi v. Chamberlain Mfg. Co., 461 F. Supp. 894, 902 (D.N.J. 1978), mod. 473 F. Supp. 786 (D.N.J. 1979), is to the same effect; again, the New Jersey Tort Claims Act was not considered. In Gipson v. Bass River, supra at 127, the court *514 applied the two-year limitation period of N.J.S.A. 59:8-8, a section of the New Jersey Tort Claims Act, to a § 1983 suit against a municipality. At the same time, Gipson pointed out that this act did not provide any limitation for suits brought against public officials and suggested, without deciding, that the six-year statute, N.J.S.A. 2A:14-1, might apply to them. At 129. This statute provides that
Every action at law ... for any tortious injury to real or personal property ... for any tortious injury to the rights of another not stated in Sections 2A:14-2, and 2A:14-3 of this title, or for recovery of a contractual claim or liability, expressed or implied, not under seal ... shall be commenced within six years next after the cause of any such action shall have accrued.
The only other limitation statute in New Jersey which might be applied to a suit for employment discrimination is N.J.S.A. 10:5-18, a part of the Law Against Discrimination. It requires the filing of a complaint within 180 days after the alleged act of discrimination had occurred. This provision would be most appropriate for application here were it not for the language of § 27 of the law which provides that it shall not "bar, exclude, or otherwise affect any right of action, civil or criminal, which may exist independently" of that law. If the 180-day condition is applied here, it will "bar, exclude or otherwise affect" the constitutional suit of plaintiff. Consequently, this period of limitations is not applicable.
The appropriate statutes to apply to the action under the Federal Constitution are N.J.S.A. 59:8-8 (in the Tort Claims Act), providing a two-year period of limitation for plaintiff's suit against the municipality, and N.J.S.A. 2A:14-1, providing a six-year period of limitation for her suit against the individual defendants. The Tort Claims Act, as pointed out above, applies to constitutional "injuries". N.J.S.A. 2A:14-1 applies to "any tortious injury to the rights of another not stated in section 2A:14-2 [personal injuries] and 2A:14-3 [libel and slander] of this title," and therefore also applies to an action which, as here, addresses the invasion of a federal constitutional property right.
*515 There is no reason to follow a different path in connection with plaintiff's suit under the New Jersey Constitution. There should be less reluctance to apply our own statutes to such suits. Logic requires the imposition of some time limit upon them; they should not be a threat forever.
Plaintiff complains of two acts of discrimination, one occurring in December 1973 or January 1974, when her first application for employment was refused, and the other occurring in the latter part of 1977, at the time her second application was rejected. Her complaint was filed on August 16, 1978. The two-year statute of limitations applies to her claims against Stone Harbor and therefore bars the 1973-74 claim against that municipality under both Constitutions.[1] It does not bar the 1977 claim. The six-year statute applies to the suit against the individual defendants and does not bar any claims against them.

E. Immunities  Municipal and Individual

(1) Under the Federal Constitution

Assuming, arguendo, that the Federal Constitution may be relied upon by plaintiff, questions of immunity must be addressed. Municipalities have no immunity from suits brought under the federal Civil Rights Act. Owen v. City of Independence, supra, expanding the rules of Monell v. New York, so decided based upon the court's reading of Congressional intent when the act was passed. The question of municipal immunity has not been considered in connection with direct constitutional claims but it seems clear that municipalities should enjoy no *516 better position in connection with such suits than they enjoy when sued under the act. The Federal Constitution makes no provision for immunities in such cases.
The immunity to which federal officials are entitled when sued for civil rights violations under the United States Constitution has been held to be the same as state officials sued under § 1983. Butz v. Economou, supra 98 S.Ct. at 2907. It follows that state officials, sued for violation of the Federal Constitution, should occupy a parallel position.
Under Wood v. Strickland, 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975), state executive or administrative officials are entitled to a qualified immunity, providing complete protection when they have acted in good faith, objectively and subjectively. The rule is explained in Endress v. Brookdale, 144 N.J. Super. 109 (App.Div. 1976):
There should be a consideration of the objective and subjective criteria of good faith mandated by Wood v. Strickland; that is, the subjective aspect of whether the official acted sincerely and with the belief that he was doing right, and not with the malicious intention to cause a deprivation of constitutional rights; and if that test was met, the objective standard of whether the official knew or reasonably should have known that his act would violate the clearly established constitutional rights of plaintiff. [at 136-137]
In short, an official sued as an individual will be immune if both of the following criteria are satisfied: (a) he has acted in good faith, and (b) without knowledge or reason to know that his action trespassed upon a constitutional right.
In the present case the individual defendants are not protected by the defense of qualified immunity. Assuming that they meet the subjective test of good faith, it is apparent that they cannot meet the objective test of good faith. If, in fact, they rejected plaintiff's application because she was a woman, but did so in good faith, i.e., believing that they had a right to make that distinction, that belief was not reasonable. They are charged with the knowledge that they may not discriminate on the basis of sex, that such discrimination is barred by the Federal Constitution.

*517 (2) Under the New Jersey Constitution

Our Constitution does not address immunities in civil rights actions and the question has not been considered in any prior decision. As noted, under Monell and Owen, supra, municipalities have no immunity in suits commenced under the federal Civil Rights Act; individuals have qualified immunity. Whatever immunity from suit municipalities and their officials may have enjoyed in ancient times has been consistently eroded by New Jersey decisions, e.g., Willis v. Conservation & Ec. Dev. Div., 55 N.J. 534 (1970), and, recently, by the Tort Claims Act. The New Jersey Constitution may be interpreted as providing more liberal remedies for those deprived of civil rights than the United States Constitution. State v. Johnson, 68 N.J. 349, 353 (1975). It would be anomalous to grant immunity to New Jersey municipalities sued under our Constitution while they remain liable when sued under federal law, particularly when our courts have concurrent jurisdiction over the latter actions. Endress v. Brookdale, supra, 144 N.J. Super. at 132. A grant of other than qualified immunity to municipal officials would not affect their liability under federal law. A conflict between New Jersey law and federal law with respect to immunity rules is not in the public interest. It follows, for all of these reasons, that the immunities of municipalities and their officials sued directly under our Constitution are identical to those provided by federal law. In the present action, none of the defendants enjoys any immunity defense with respect to the claims made under either constitution.

D. The Policy Requirement
Monell v. New York, supra, reversing prior law, held that municipalities are subject to suit under § 1983 of the Civil Rights Act. The court said:
Local governing bodies ... can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. [436 U.S. at 690, 98 S.Ct. at 2035-2036]
*518 No case has decided whether these conditions apply to a direct constitutional action. It is clear from the analysis above that the rules applying to § 1983 federal actions will apply in suits brought under the Federal Constitution. Consequently, if plaintiff's suit under this Constitution were not barred because § 1983 was available to her, the Monell conditions would apply. Peper permits a suit based upon the New Jersey Constitution, even though § 1983 has been disregarded. The Monell requirements are obviously useful in connection with such actions; they provide assurance that the action complained about is "official," one truly referenced to the municipality. Monell should be followed here. Consequently, plaintiff must prove official action by the municipality in order to succeed on her claims against it under either Constitution. It was the governing body of Stone Harbor which adopted the recommendation of its Public Safety Committee, hiring two male police officers and thereby finally rejecting the plaintiff's employment application. This was a "decision officially adopted" on behalf of Stone Harbor by its borough council. If that decision was unconstitutional, plaintiff is entitled to a judgment, at least upon her claim based upon the New Jersey Constitution against the municipality. Her claim against the individual defendants is not restricted by the policy requirement; they are liable if they trespassed upon plaintiff's constitutional rights.

E. The Substantive Issue
The standards to be applied in sex discrimination cases involving our Constitution are set forth in Peper, supra 77 N.J. at 81. It adopted rules established in Title VII cases by the United States Supreme Court. These should apply to plaintiff's causes of action under the Federal Constitution; the same rights are implicated whether Title VII or the New Jersey or the United States Constitution is involved. Two separate theories of relief are recognized:
"Disparate treatment" such as alleged in the present case is the most easily understood type of discrimination. The employer simply treats some people less favorably than others because of their race, color, religion, sex, or national *519 origin. Proof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment.
... Claims of disparate treatment may be distinguished from claims that stress "disparate impact." The latter involves employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group then another and cannot be justified by business necessity. Proof of discriminatory motive, we have held, is not required under a disparate impact theory. International Brotherhood of Teamsters v. United States, 431 U.S. 324 [97 S.Ct. 1843, 52 L.Ed.2d 396] (1977).
Nancy Lloyd is concerned about "disparate treatment." The test to be applied, adopted from McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), by Peper, 77 N.J. at 82, and couched in terms of racial discrimination, is as follows:
The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from the persons of complainant's qualification.
Here, the first test would be changed to read (ii) that she is a woman.
In McDonnell Douglas the United States Supreme Court, echoed by Peper, noted that these standards were not inflexible and might not apply to a different factual situation. They are appropriately applied to the facts of this case.
Once plaintiff has established a prima facie case, the burden shifts to the employer to articulate a nondiscriminatory reason for rejecting the application. After the employer presents such a reason, the burden shifts back to the claimant, who may then demonstrate that the reason is not sufficient or is not true. Peper, 77 N.J. at 82-83. In Texas Dep't of Community Affairs v. Burdine, ___ U.S. ___, 101 S.Ct. 1089, 67 L.Ed.2d 207, (101 S.Ct. at 1091) (1981), the United States Supreme Court held that the only burden placed upon the employer, after the prima facie case has been established, is that of "explaining clearly the non-discriminatory reasons for its action." It said that the employer did not have "the burden of persuading the *520 court that it had convincing objective reasons for preferring the chosen applicant above the plaintiff, id. 101 S.Ct. at 1091, and that the ultimate burden of persuasion is always on the plaintiff, id., 101 S.Ct. at 1091. This clarification of the McDonnell Douglas rules applies here.[2]
The 1977 rejection of the plaintiff's application may be disposed of quickly. That application was filed after plaintiff had retired from full-time employment and one day after her husband, a member of the Stone Harbor police force, had been charged with a disciplinary infraction. Considerable testimony produced by the borough showed that before and after the filing of this application her attitude toward her work, the public and personnel of the police department, was very poor, and that these reasons supported the rejection of her application. She denied these claims, but the defense testimony and the setting in which her application was filed persuades me that the borough's proofs were accurate. Her denial of employment in 1977 was for valid reasons having nothing to do with sex discrimination, and her suit based upon that denial must be dismissed as to all defendants.
The 1973-74 incident requires exploration; it is subject to the Peper rules. Plaintiff has proved that (1) she is a woman, (2) she was qualified for the job, and (3) despite her qualifications she was rejected. However, she has not proved that the *521 position she sought remained open after the rejection. The contrary was true; all vacancies were filled and other applicants were not sought until well over a year later, when it was apparent that her application was not pending, although she now argues to the contrary. Plaintiff therefore failed to prove a prima facie case. If the proofs convincingly demonstrated a rejection of the application for actually discriminatory reasons, this fourth step in the Peper process, the proof that the position remained open, would be ignored. However, the evidence of discrimination is not convincing.
The borough officials, whose memories were necessarily poor as a result of the passage of many years, could not recall any particular reason for rejecting Nancy Lloyd's application at their December 1973 meeting. All were positive that sex did not play a role. A sergeant who attended the meeting had commented that he did not want any "broads" on his squad, a clearly sexist remark. However, nothing shows that this remark affected the decision. No member of the Public Safety Committee or of the borough council was shown to have any sexist attitude toward plaintiff or anyone else. Furthermore, the chief of police was interested in the employment of women on police forces, had written a paper on the subject, and had a personal philosophy favoring such employment. Initially, he recommended the acceptance of Nancy Lloyd's application, later changing his mind only because he believed that she would have difficulty getting along with her associates, a reason found sufficient in Kiss v. Community Affairs Dep't, 171 N.J. Super. 193, 200-201 (App.Div. 1979). It is of some significance that plaintiff did not bring her suit until over four years after the alleged discriminatory action took place, after she had left the force, after her husband had become the object of disciplinary charges, and after she had filed a second employment application which was rejected. These circumstances question the bona fides of the claim. Plaintiff's burden of proving sex discrimination by a preponderance of the evidence was not met.

*522 Conclusions
A. Plaintiff's federal action is barred by her failure to pursue available remedies under Title VII of the Civil Rights Act. This failure does not bar her state constitutional action.
B. Plaintiff's state constitutional action is barred by her failure to comply with the notice provisions of the New Jersey Tort Claims Act. This failure does not bar her federal action.
C. Plaintiff's state and federal constitutional claims against the municipality, concerning its 1973-74 action, are barred by the New Jersey two-year statute of limitation. Her claim against the municipality involving its 1977 action and her claims against the individual defendants concerning their 1973-74 and 1977 actions are not barred by time restrictions.
D. Immunity defenses are not available to any defendant.
E. Sex discrimination was not proved.
NOTES
[1] Plaintiff suggests that this limitation period should be extended under the "discovery rule" of Lopez v. Swyer, 62 N.J. 267 (1973). That rule may be applied, however, only when a plaintiff is justifiably unaware of the facts supporting her cause of action until after the statute of limitations has run. It permits the statute to be tolled. Here, the basic facts supporting Nancy Lloyd's action were known by her, or reasonably available to her, immediately after the rejection of her application. She is not entitled to the protection of the discovery rule.
[2] In Texas Dep't of Community Affairs, the Supreme Court said that a plaintiff's burden of proof under the established test was not "particularly difficult" because, among other things, claimants in Title VII suits in the federal courts have access to the EEOC investigatory files concerning the discrimination complaint. (101 S.Ct. at 1091). This is not true when suit is instituted in a state court, as here. Furthermore, access to EEOC files was not permitted until EEOC v. Associated Dry Goods Corp., ___ U.S. ___, 101 S.Ct. 817, 66 L.Ed.2d 762 (1981), was decided, and that decision came after Peper, supra. Consequently, the New Jersey Supreme Court did not have these reasons available when Peper was decided, a circumstance which might permit the plaintiff's burden of proof to be lightened. It is my conclusion, however, that the burden imposed by Peper remains a reasonable one and should not be changed in the present factual situation.