**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1775-20

IN THE MATTER OF DAVID
NILAND, POLICE CHIEF
(PM0169A), CLIFTON.

_____

Argued March 2, 2022 – Decided March 16, 2022

Before Judges Hoffman, Whipple, and Geiger.

On appeal from the New Jersey Civil Service Commission, Docket No. 2020-2726.

Robert K. Chewning argued the cause for appellant David Niland (McLaughlin & Nardi, LLC, attorneys; Robert K. Chewning and Maurice W. McLaughlin, on the briefs).

Thomas A. Abbate argued the cause for respondent City of Clifton (DeCotiis, Fitzpatrick, Cole & Giblin, LLP, attorneys; Thomas A. Abbate, of counsel; Gregory J. Hazley and Angelo J. DeFlora, on the brief).

Matthew J. Platkin, Acting Attorney General, attorney for respondent New Jersey Civil Service Commission (Pamela M. Ullman, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Appellant David Niland appeals from the final administrative action of the New Jersey Civil Service Commission (Commission of CSC) upholding the bypass of his name on the certified eligible list for Police Chief of the City of Clifton Police Department (CPD).  We affirm.

We take the following facts from the record.  In February 2020, the City of Clifton (City) announced a vacancy for Police Chief.  A promotional exam was called.  The Commission issued a list of three captains certified as eligible to take the exam – Captain Niland, Captain Christopher Stabile, and Captain Thomas Rinaldi, who was serving as Acting Police Chief.

Under the City's form of government, City Manager Dominick Villano was the appointing authority and, in that capacity, appointed personnel to positions in the CPD upon resolution of the City.  The so-called Rule of Three regulation affords discretion to the City in selecting the new Police Chief from the top three eligible candidates, where none of the eligible candidates is a military veteran.  N.J.A.C. 4A:4-4.8(a)(3).

On February 7, 2019, Villano and City Personnel and Equal Employment Opportunity Officer Douglas Johnson met with the eligible candidates to discuss the promotional process.  Niland alleges that during the meeting, Villano stated that the promotional exam scores would determine the selection

2

of Police Chief to avoid promotion based on an "improper basis" and did not mention that an interview process would be used.

Following the promotional exam, the Commission certified a list of two eligible candidates – Niland and Rinaldi. Niland scored 79.58 on the exam, Rinaldi scored 77.87. Neither is a veteran.

Niland and Rinaldi were interviewed by Villano and Johnson and asked the same questions. The interview's weight and grading method were not explained.

Niland and Rinaldi were both well-respected, longtime members of the CPD. Their exam scores were only 1.71 points apart. They each presented extensive but materially different qualifications.

Rinaldi was a twenty-five-year veteran of the CPD. He had served in several Divisions and every Bureau in the CPD, including Administrative Services, Field Operations, and Investigations. Rinaldi had received several commendations, achieved various certifications, and completed advanced training. In addition, he served as Acting Police Chief during the vacancy period, which took place during the COVID-19 pandemic.

Niland had been a police officer for twenty-five years, all but three of those years with the CPD. He too had achieved various certifications and

A-1775-20

completed advanced training. Niland had served in two of the three bureaus of the CPD, Field Operations and Administrative services.

Villano certified that "[b]ased on Rinaldi's comprehensive and overall experience, and his positive qualities and skills, [he] determined Rinaldi was the best fit and most meritorious for the appointment to Police Chief." Villano noted that "Acting Chief Rinaldi was immediately put to the test amid the COVID-19 pandemic this year, which caused significant scheduling changes in the [CPD], and has performed his duties successfully." Villano bypassed Niland and appointed Rinaldi as Acting Police Chief, pending formal appointment by the City. Thereafter, Rinaldi was formally appointed Police Chief effective May 1, 2020.

On June 15, 2020, Niland appealed to the Commission, challenging the bypass under the Rule of Three for promotion as Police Chief. Niland claimed he was the superior candidate for Police Chief and had more years of service as a police officer, superior work assignments, and more extensive training. Niland alleged that contrary to indicating that the promotion would be based on the test scores, the City ignored his qualifications and promoted Rinaldi based on favoritism, nepotism, and Rinaldi's political connections and relationships. Niland contended that that no weight should have been placed on the candidate's performance during the interview because the City failed to

A-1775-20

demonstrate that the interview process was structured, objective, and uniform for each candidate. Niland requested that his appeal be referred to the Office of Administrative Law (OAL) as a contested case for hearing.

The City contended that its selection was based on legitimate criteria in accordance with Civil Service law. It noted that each candidate was asked the same questions during separate interviews. The City averred that the selection was based, in part, on Rinaldi's experience serving in every Bureau within the CPD during his twenty-five-year tenure, in contrast to Niland having only served in two Bureaus. The City asserted that it considered Rinaldi's overall experience and positive qualities and skills, and determined Rinaldi was the "best fit and most meritorious for appointment to Police Chief." The City also considered Rinaldi's successful service as Acting Police Chief during the COVID-19 pandemic. The City argued that Niland offered only generalized accusations of alleged ulterior motives for the promotion that were devoid of any factual support and fell short of showing that the decision to bypass Niland was based on an improper motive.

On January 22, 2021, the Commission issued a final administrative action denying Niland's appeal. After considering the briefing and certifications submitted by the parties, the Commission provided the following analysis:

A-1775-20

Initially, bypass appeals are treated as reviews of the written record. See N.J.S.A. 11A:2-6(b). Hearings are granted in those limited instances where the Commission determines that a material and controlling dispute of fact exists that can only be resolved through a hearing. See N.J.A.C. 4A:2-1.1(d). For the reasons explained below, no material issue of disputed fact has been presented that would require a hearing. See Belleville v. Dep't of Civ. Serv., 155 N.J. Super. 517 (App. Div. 1978).

N.J.S.A. 11A:4-8, N.J.S.A. 11A:5-7, and N.J.A.C. 4A:4-4.8(a)(3)(ii) allow an appointing authority to select any of the top three interested eligibles on a promotional list, provided that no veteran heads the list. Moreover, it is noted that the appellant has the burden of proof in this matter. See N.J.A.C. 4A:2-1.4(c).

In cases of this nature where dual motives are asserted for an employer's actions, an analysis of the competing justifications to ascertain the actual reason underlying the actions is warranted. See Jamison v. Rockaway Twp. Bd. of Educ., 242 N.J. Super. 436 (App. Div. 1990). In Jamison, [id.] at 445, the court outlined the burden of proof necessary to establish discriminatory or retaliatory motivation in employment matters. Specifically, the initial burden of proof in such a case rests on the complainant who must establish discrimination or retaliation by a preponderance of the evidence. Once a prima facie showing has been made, the burden of going forward, but not the burden of persuasion, shifts to the employer to articulate a legitimate non-discriminatory or non-retaliatory reason for the decision. If the employer produces evidence to meet its burden, the complainant may still prevail if he or she shows that the proffered reasons are pretextual or that the improper reason more likely motivated the employer. Should the employee sustain this burden, he or she has

6

established a presumption of discriminatory or retaliatory intent. The burden of proof then shifts to the employer to prove that the adverse action would have taken place regardless of the discriminatory or retaliatory motive. In a case such as this, where the adverse action is failure to promote, the employer would then have the burden of showing, by preponderating evidence, that other candidates had better qualifications than the complainant.

Since only non-veterans were listed on the certification, it was within Clifton's discretion to select any of the two interested eligibles on the certification. Nevertheless, the appellant alleges that he was bypassed for the improper reasons of favoritism, nepotism and political connections and relationships. However, the appellant has not provided any substantive evidence beyond mere allegations that his bypass was motivated by such improper reasons. Moreover, Clifton has presented legitimate reasons for bypassing the appellant and selecting [Rinaldi]. In this regard, [Rinaldi], unlike the appellant, served in every division of the Police Department. It is of no moment that Clifton may have used the term "division" when it should have used the term "bureau." Even assuming that "bureau" is the correct term, the appellant still acknowledges that [Rinaldi] has served in every bureau, while the appellant has served in two of the Police Department's three bureaus. Additionally, Clifton points to [Rinaldi's] successful performance of his duties while serving as "Acting" Police Chief. See [In re] Donald Fillinger (CSC, decided December 16, 2009) ([a]bsent a showing that another individual was selected for an "acting" position based on an improper reason, [the] Commission determined it was appropriate for appointing authority to rely on experience gained in the "acting" position when exercising its discretion under the "Rule of Three"). [Rinaldi's] experience in the foregoing respects is not in dispute.

7

Neither has the appellant shown that Clifton's proffered reasons were pretextual. For example, the appellant claims that no mention was made at the February 7, 2019 meeting that an interview would take place; . . . that that this was the first time that Clifton used an interview process in a police promotion; and that the interview was unstructured. It should be emphasized though that appointing authorities are permitted to interview candidates and base their hiring decision on the interview. This is within the appointing authority's discretion and may apply to all positions, including Police Chief. However, interviews, whether structured or not, are not required. See [In re] Nicholas R. Foglio (CSC, decided February 22, 2012). It is within the appointing authority's discretion to choose its selection method, i.e., whether or not to interview candidates. See e.g., [In re] Angel Jimenez (CSC, decided April 29, 2009); [In re] Abbas J. Bashiti (CSC, decided September 24, 2008); [In re] Paul H. Conover (MSB, decided February 25, 2004); [In re] Janet Potocki (MSB, decided January 28, 2004). Thus, since conducting interviews is discretionary, any purported lack of structure in the interview is not cause to find that the appellant's bypass was improper. So long as the hiring decision is in compliance with N.J.A.C. 4A:4-4.8(a)[(3)], the Commission cannot find that the interview was conducted inappropriately. In this case, the record is clear that Clifton interviewed both candidates and considered their qualifications. In this regard, it is evident that Clifton interviewed the appellant, and his experience was evaluated in comparison with [Rinaldi's], as noted earlier. The appellant does not substantively dispute Clifton's representation that both candidates were asked the same questions. In short, even assuming that this was the first time that Clifton used an interview process for a police promotion, the Commission lacks any substantive basis to conclude that Clifton instituted such process for any improper

8

reason or that the format of the process establishes that the appellant was improperly bypassed. Further, even assuming that the City Manager represented on February 7, 2019 that the candidate who scored the highest on the examination would be selected, the appellant has not established that such statement had any binding effect or that the City Manager changed his mind for any improper reason.

Additionally, even assuming, arguendo, that the appellant is more qualified for the position at issue, Clifton still has selection discretion under the "Rule of Three" to appoint a lower-ranked eligible absent any unlawful motive. See N.J.A.C. 4A:4-4.8(a)[(3)]; [In re] Nicholas R. Foglio, Fire Fighter (M2246D), Ocean City, 207 N.J. 38, 49 (2011). [Cf.] In re Crowley, 193 N.J. Super. 197 (App. Div. 1984) (Hearing granted for individual who alleged that bypass was due to anti-union animus); Kiss v. Dep't of Cmty. Affs., 171 N.J. Super. 193 (App. Div. 1979) (Individual who alleged that bypass was due to sex discrimination afforded a hearing). Moreover, the appellant does not possess a vested property interest in the position. In this regard, the only interest that results from placement on an eligible list is that the candidate will be considered for an applicable position so long as the eligible list remains in force. See Nunan v. Dep't of Pers., 244 N.J. Super. 494 (App. Div. 1990). The appellant has not presented any substantive evidence regarding his bypass that would lead the Commission to conclude that the bypass was improper or an abuse of Clifton's discretion under the "Rule of Three." Moreover, Clifton presented legitimate reasons for the appellant's bypass that have not been persuasively refuted. Accordingly, a review of the record indicates that Clifton's bypass of the appellant's name was proper, and the appellant has not met his burden of proof in this matter.

This appeal followed. Appellant raises the following points for our consideration:

> I. STANDARD OF REVIEW.
>
> II. THE COMMISSION SHOULD HAVE REFERRED THIS MATTER TO THE OAL BASED ON THE MATERIAL FACTS IN DISPUTE.
>
> III. CLIFTON'S REASON TO BYPASS APPELLANT WAS UNLAWFUL, ARBITRARY, AND CAPRICIOUS.

We affirm the denial of appellant's appeal without an evidentiary hearing substantially for the reasons expressed by the Commission in its written decision. The Commission's final administrative action "is supported by sufficient credible evidence on the record as a whole" and does not warrant extended discussion. R. 2:11-3(e)(1)(D). We add the following comments.

Our scope of review of the final administrative action of an agency is limited. Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011). "[A] 'strong presumption of reasonableness attaches'" to the Commission's decision. In re Carroll, 339 N.J. Super. 429, 437 (App. Div. 2001) (quoting In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993), aff'd, 135 N.J. 306 (1994)). The party challenging the final administrative action has the burden to demonstrate grounds for reversal. Lavezzi v. State, 219 N.J. 163, 171 (2014) (citing In re J.S., 431 N.J. Super. 321, 329 (App. Div. 2013)).

10

"We will not set aside the determination of an administrative agency" unless the challenger clearly demonstrates that the decision was "arbitrary, capricious, unsupported by substantial credible evidence contained in the record, or in violation of express or implicit legislative policy." Carroll, 339 N.J. Super. at 437. When reviewing an agency decision, we examine (1) whether the agency action violated "express or implied legislative policies," (2) whether there is substantial evidence in the record to support the agency's decision, and (3) whether in applying the law to the facts, the agency reached a conclusion "that could not reasonably have been made on a showing of the relevant factors." Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018). Where an agency's decision satisfies these criteria, we accord substantial deference to the agency's fact-finding and legal conclusions, recognizing "the agency's 'expertise and superior knowledge of a particular field.'" Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 10 (2009) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)).

Niland argues the Commission erred by not referring the appeal to the OAL as a contested case because there are material facts in dispute regarding the City's true reasons for changing its promotional process. We disagree.

11

The Commission may transfer a "contested case" to the OAL for a hearing.  A contested case is defined as:

> [A] proceeding, ... in which the legal rights, duties, obligations, privileges, benefits[,] or other legal relations of specific parties are required by constitutional right or by statute to be determined by an agency by decisions, determinations, or orders, addressed to them or disposing of their interests, after opportunity for an agency hearing . . . .
>
> [N.J.S.A. 52:14B-2.]

The Administrative Procedure Act, N.J.S.A. 52:14B-1 to -31, "does not create a substantive right to an administrative hearing; it merely provides for a procedure to be followed in the event an administrative hearing is otherwise required by statutory law or constitutional mandate." Toys "R" Us v. Twp. of Mount Olive, 300 N.J. Super. 585, 590 (App. Div. 1997).  An agency head has the exclusive authority to determine whether a case is a contested case within the intent of the APA.  N.J.S.A. 52:14F-7(a); N.J.A.C. 1:1-4.1; Sloan ex rel. Sloan v. Klagholtz, 342 N.J. Super. 385, 392 (App. Div. 2001).

"To establish a constitutional right to a hearing, an individual must show that there is a genuine dispute of material fact and that he has a constitutionally protected interest." In re Crowley, 193 N.J. Super. 197 (App. Div. 1984) (citing Cunningham v. Dep't of Civ. Serv., 69 N.J. 13, 18-19 (1975)).  "[T]he mere expectancy of employment [is] not an interest of

12

constitutional dimension . . . ." Ibid. (citing Bd. of Regents v. Roth, 408 U.S. 564, 576-77 (1972)). Moreover, "[n]o right accrues to a candidate whose name is placed on an eligible list." In re Foglio, 207 N.J. 38, 44 (2011) (citing Crowley, 193 N.J. Super. at 210). "The only benefit inuring to such a person is that so long as that list remains in force, no appointment can be made except from that list." Crowley, 193 N.J. Super. at 210.

Niland did not have a constitutional right to a hearing as his only interest was his expectation that he would be promoted to Police Chief. Id. at 209. Nor did Niland have the right to an evidentiary hearing under N.J.A.C. 4A:2-1.1(d) or N.J.S.A. 52:14B-2. N.J.A.C. 4A:2-1.1(d) provides in pertinent part that the Commission will decide an appeal "on a written record" except when a hearing is required by law or the Commission finds "a material and controlling dispute of fact exists that can only be resolved by a hearing[.]" When there are no contested material issues of fact, the matter is not considered a "contested case." Sloan, 342 N.J. Super. at 392 (citing N.J.S.A. 52:14B-2(b)).

Here, the Commission did not base its final decision on credibility findings and there was no genuine dispute as to any material fact. Rather, the Commission relied on the undisputed facts in the record that showed the City's "actual reasons and motivations" for utilizing the Rule of Three to bypass Niland and promote Rinaldi. The City was permitted to consider Niland and

13

Rinaldi's respective experience and training. Further, as discussed below, Niland failed to establish a prima facie case of favoritism, nepotism, discrimination, or other improper motivation for bypassing him and selecting Rinaldi. Therefore, he did not have a right of discovery based on those unsupported claims. Instead, he made bare, unsupported allegations. Such unsupported allegations do not warrant an evidentiary hearing. The Commission rejected Niland's legal conclusions.

Niland further argues that the Commission's final agency action is arbitrary, capricious, and unreasonable. He contends that the City failed to provide legitimate reasons when it bypassed him on the eligible list. The Civil Service Act, N.J.S.A. 11A:1-1 to 12-6, and regulations promulgated thereunder generally provide for merit-based appointments to positions in the civil service. Foglio, 207 N.J. at 43-44 (quoting N.J. Const. Art. VII, § 1, ¶ 2). However, "[t]he Rule of Three, which governs the hiring discretion of the appointing authority, 'permits an appointing authority to select one of the three highest scoring candidates from an open competitive examination.'" Id. at 45 (quoting Local 518, N.J. State Motor Vehicle Emps. Union v. Div. of Motor Vehicles, 262 N.J. Super. 598, 603 (App. Div. 1993)). "Under the Rule of Three, . . . the appointing authority has the discretion to select from among the top three candidates in filling a vacancy." Ibid. (citing N.J.S.A. 11A:4-8);

accord Terry v. Mercer Cnty. Bd. of Chosen Freeholders, 86 N.J. 141, 149-50 (1981). "[T]he appointing authority retains discretion to bypass a higher-ranked candidate 'for any legitimate reason based upon the candidate's merit.'" Foglio, 207 N.J. at 47 (quoting In re Hruska, 375 N.J. Super. 202, 210 (App. Div. 2005)).

If the appointing authority selects a lower-ranked candidate, it is required to provide a "statement of the reasons 'why the appointee was selected instead of a higher ranked eligible [candidate.]'" Ibid. (citing N.J.A.C. 4A:4-4.8(b)(4)). The appointing authority has "broad discretion" to consider a wide range of subjective factors. Terry, 86 N.J. at 150. The appointment does not run afoul of our State Constitution if the appointing authority has any "legitimate reason" for bypassing a higher-ranked candidate. Crowley, 193 N.J. Super. at 214. For example, the appointing authority may rely "on a preference for a college degree; or the performance of the applicants in the give-and-take of an interview; or on extraordinary character and references[,] . . . experience and training. Each of those reasons would have satisfied N.J.A.C. 4A:4-4.8(b)(4)." Foglio, 207 N.J. at 49.

A higher-ranked candidate challenging a bypass "bears the burden of proving that the appointing authority was motivated by an illegitimate, unlawful motive." Foglio, 207 N.J. at 56 (citing N.J.A.C. 4A:2-1.4(c)). Once

the candidate makes a prima facie showing, the burden of going forward shifts to the appointing authority to present a legitimate, non-discriminatory reason for the decision. Jamison, 242 N.J. Super. at 445. Should the appointing authority meet its burden, the candidate can still prevail if they show that the articulated reasons are pretextual or that an improper motive was more likely responsible. Ibid. If the candidate meets that burden, they have established a presumption of discriminatory intent and the burden shifts to the appointing authority. Id. at 446. The appointing authority must then prove that the action would have taken place regardless of the discriminatory motive, typically by showing that the other candidates had better qualifications. Ibid.

Here, the record supports the Commission's determination that the City properly exercised its discretion under the Rule of Three when it bypassed Niland. The Commission found the City had the discretion to conduct interviews as part of the promotional process and that there was no evidence in the record to suggest the interviews were pre-textual. Nor was there any evidence that the interviews were conducted inappropriately. Moreover, Villano's earlier statement that the test scores would be determinative did not preclude the City from interviewing candidates, even if the City had not used interviews for a police promotion. Niland produced no evidence that the City

16

used the interviews "for any improper reasons or that the format of the process establishes that Niland was improperly bypassed."

The Commission also rejected Niland's assertions that the City's bypass decisions were due to invidious reasons. The Commission noted Niland did not present any evidence to support his assertion that Rinaldi was appointed based on political considerations and the City "presented legitimate reasons for Niland's bypass that have not been persuasively refuted." Unsupported, generalized complaints of discrimination are insufficient. Niland has not alleged he is a member of a protected class or that he was bypassed for an invidious reason such as his race, gender, ancestry, religion, or anti-union animus. Niland's claim he was bypassed for invidious reasons lacks sufficient merit to warrant further discussion in a written opinion. R. 2:11-3(e)(1)(E).

The Commission's decision was supported by the record and consistent with applicable law. We conclude that it did not abuse its discretion when it denied Niland's appeal, thereby upholding the City's decision to bypass Niland for promotion to Police Chief without the need for an evidentiary hearing.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1775-20