HARISADAN, A PARTNERSHIP FIRM OF MUKUL BHATT, PANKAJ AGRAWAL, UPENDRA CHUDGAR AND KAMAL PAREKH; AND WUENSCH EAST ORANGE, PLAINTIFFS-APPELLANTS, v. THE CITY OF EAST ORANGE, THE HOUSING AUTHORITY OF EAST ORANGE, THOMAS H. COOKE, JR., AND HAROLD J. SMITH, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Submitted June 8, 1982—Decided June 25, 1982.

Before Judges BOTTER and FURMAN.

*Robert S. Tobin* for appellants.

*William H. Eaton,* City Counsel, for respondents (*Charles Rawitz,* Assistant City Counsel, on the brief).

BOTTER, P.J.A.D.

This is an appeal from the entry of summary judgment in favor of defendants dismissing plaintiffs' action for inverse condemnation of property. In his letter opinion the trial judge concluded that the action was barred by the six-year statute of limitations, *N.J.S.A.* 2A:14–1. The judge held that the declaration of blight on December 14, 1970 was the act that allegedly harmed plaintiffs, that plaintiffs' complaint was filed on October 16, 1980, almost ten years after the declaration of blight, and that the statute of limitations began to run on the declaration of blight, namely, December 14, 1970. We disagree with this holding as to the statute of limitations, and reverse. This disposition is not intended to imply any opinion on the merits of plaintiffs' cause of action.

By their amended complaint plaintiffs asserted that Harisadan was a partnership which owned 33 Halstead Street, East Orange, New Jersey, and Wuensch East Orange was a corporation which was a tenant occupying the major portion of that property. The complaint recited that the City of East Orange was substituted for the Housing Authority of East Orange for all redevelopment activities, including the Brick Church Urban Renewal Project in the city. By resolution adopted on December 14, 1970 the Brick Church Urban Renewal Project area was declared a blighted area and an urban renewal plan was adopted. Thereafter, various properties were acquired by private purchase and by condemnation. The complaint recited that plaintiffs' property was included in Phase I of the renewal program and has been under a constant threat of condemnation for ten years. As a result, plaintiffs alleged, the property and neighboring area have substantially deteriorated in value, many of Harisadan's tenants have moved out of the premises, and Harisadan suffered a loss of income. Wuensch also alleged a diminution in value of its leasehold interest and trade fixtures in the premises. On these facts, plaintiffs asserted, defendants' conduct constituted "an inverse or de facto condemnation" for which damages are sought. *See Washington Market Enterprises, Inc. v. Trenton,* 68 *N.J.* 107 (1975). Plaintiffs' demand for relief included a declaration that their property had been "de facto acquired and appropriated by defendants" as of December 14, 1970. They asked that defendants be compelled to institute a condemnation proceeding leading to the award of just compensation, or that such other relief be granted as may be appropriate.

*Washington Market Enterprises, Inc. v. Trenton, supra,* was a case in which a property owner asserted a cause of action similar to that asserted in the case before us. In *Washington Market* the declaration of blight occurred in 1967. Thereafter, the City of Trenton acquired approximately half of the properties in the project area. However, in May 1973 Trenton notified the remaining property owners, including Washington Market Enter-

prises, Inc., that the project would be abandoned and their properties would not be acquired. Plaintiff, Washington Market Enterprises, Inc., asserted that it lost tenants in its building beginning in 1963 following a feasibility study for redeveloping the area in question. It also asserted that after the declaration of blight in 1967 the area surrounding its property deteriorated markedly and its remaining tenants vacated its building in 1972. It sought to compel the City of Trenton to condemn its property or, in the alternative, it sought an award of damages for its loss of value.

Our Supreme Court held that it would be inappropriate to order the municipality to acquire property which it did not want. 68 *N.J.* at 123. However, it held that plaintiff would be entitled to damages if it is successful in its proofs. *Id.* The court said:

Upon remand the plaintiff will be required to show that there has been substantial destruction of the value of its property and that defendant's activities have been a substantial factor in bringing this about. It will be part of its burden of proof to identify the approximate time that this occurred; this will become the date of taking. Plaintiff will then be called upon to establish what the property would have been then worth had there been no declaration of blight and had the ensuing and related activities of the defendant not occurred. Finally, the value of the property as of the date the project was abandoned must be ascertained. This value should actually be determined as of a date somewhat subsequent to the date abandonment was announced so that the market's response to the lifting of the threat of condemnation can be better evaluated. Plaintiff will be entitled to the difference between these sums, with interest from the date of abandonment. It will also be entitled to interest on the value of its property determined as aforesaid as of the date of the hypothesized taking, calculated from that date to the date of the abandonment of the project, less the excess, if any, of rental receipts over actual disbursements made in maintaining the property for this period. [68 *N.J.* at 123–124; footnote omitted]

 *N.J.S.A.* 2A:14–1 provides that an action "for trespass to real property, for any tortious injury to real or personal property, for taking ... personal property, ... for any tortious injury to the rights of another not stated in sections 2A:14–2 [personal injury] and 2A:14–3 [libel or slander] ..." must be commenced within six years "after the cause of any such action shall have accrued." An initial problem in this case is determining when plaintiffs' cause of action accrued. *See Fernandi v.*

*Strully,* 35 *N.J.* 434, 439 (1961); *Lopez v. Swyer,* 62 *N.J.* 267, 272, 274 (1973); *Lynch v. Rubacky,* 85 *N.J.* 65, 70 (1981). The accrual of a cause of action generally involves two elements, injury and wrong. *See Lynch v. Rubacky, supra,* 85 *N.J.* at 70. Here, it cannot be said that the declaration of blight was a "tortious" act. *Wilson v. City of Long Branch,* 27 *N.J.* 360, 373–375 *cert.* den. 358 *U.S.* 873, 79 *S.Ct.* 113, 3 *L.Ed.2d* 104 (1958); *see Washington Market Enterprises, Inc. v. Trenton, supra,* 68 *N.J.* at 115. However, *Washington Market* held that a declaration of blight plus "other related activities together with the passage of time" which deprive property "of literally all or most of its value" are the essential ingredients of the asserted cause of action. *Id.* at 115, 123–124. Thus, although the taking will be deemed to have occurred when the redeveloping agency's activities significantly contributed to the substantial destruction of the value of a plaintiff's property, *id.* at 123, the declaration of blight alone cannot be deemed tortious. Moreover, the failure of the municipal agency promptly to condemn all the property in the redevelopment area cannot be deemed tortious either. *See Wilson v. City of Long Branch, supra,* 27 *N.J.* at 374. It is difficult to describe the cause of action allowed in *Washington Market* as a tort; rather it is the assertion of a constitutional right to just compensation arising out of legislatively authorized municipal conduct which has the effect of unreasonably restricting the use of private property. *See Washington Market Enterprises, Inc. v. Trenton, supra,* 68 *N.J.* at 118–119; *Ackerman v. Port of Seattle,* 329 *P.2d* 210, 222 (Wash.Sup.Ct.1958). It is more in the nature of an action in lieu of prerogative writs, since it seeks to review the reasonableness of municipal action resulting in the diminution of property values and to recover damages for such action. *Cf. Washington Market Enterprises, Inc. v. Trenton, supra,* 68 *N.J.* at 120–121.

█ Until the municipal action causing the injury is withdrawn or the project abandoned, the undue infringement upon the use of property continues. *See Morey v. Jersey City,* 94 *N.J.L.* 427, 430 (E. & A. 1920); *Ackerman v. Port of Seattle,*

*supra,* 329 *P.*2d at 223. The continuing failure or refusal to condemn plaintiffs' property contributes to plaintiffs' cause of action, so long as the property remains subject to the declaration of blight and the threat of condemnation. Thus, on the facts as alleged we conclude that plaintiffs' cause of action did not accrue on December 14, 1970 when the declaration of blight occurred and is not barred by the six-year statute of limitations.

We reverse the judgment below and vacate the dismissal of this action.