750 A.2d 764

GREENWAY DEVELOPMENT CO., INC. AND GREENWAY CORPO-RATION INC., INCORRECTLY IMPLEADED AS GREENWAY CORPORATION CO., INC., PLAINTIFFS–RESPONDENTS, v. BOROUGH OF PARAMUS, MAYOR CLIFFORD GENNARELLI, INDIVIDUALLY AND AS MAYOR AND PETER WELLS, ZONING OFFICIAL, DEFENDANTS–APPELLANTS, AND WARREN LANE ASSOCIATES, A NEW JERSEY PARTNERSHIP, ROBERT C. SUMNER, STEPHEN B. PALMER, STANLEY BEKRITSKY AND DOUGLAS HAYNES, CO–TRUSTEES OF THE EDITH

MARION SUMMER TRUST AGREEMENT NO. 2, ARTHUR B.
FOWLER, ARTHUR B. FOWLER, II, AND JOHN FOWLER, ALL
AS SUCCESSOR VENTURE AGENTS OF PARAMUS INVEST-
MENT VENTURE, A JOINT VENTURE, SCHILP & CO., L.L.C.,
ALEXANDER SUMMER, L.L.C. AND BOROUGH OF PARAMUS
PLANNING BOARD, DEFENDANTS.

Argued February 14, 2000—Decided May 15, 2000.

*Frank J. Cuccio* argued the cause for appellants (*Cuccio and Cuccio,* attorneys; *Mr. Cuccio* and *Jonathan M. Remshak,* on the brief).

*Sheri K. Siegelbaum* argued the cause for respondents (*Scarinci & Hollenbeck,* attorneys).

The opinion of the Court was delivered by

COLEMAN, J.

The issue raised in this appeal is whether the notice of claim provision in the New Jersey Tort Claims Act (TCA), *N.J.S.A.* 59:1–1 to 12–3, applies to an action for inverse condemnation. The Law Division found that compliance with the TCA was not a prerequisite to pursuing inverse condemnation claims. We agree and affirm.

I.

The relevant facts are undisputed. In March 1997, plaintiffs Greenway Development Co., Inc. and Greenway Corporation (collectively Greenway) contracted with Paramus Investment Venture to purchase approximately 2.2 acres of land located in a residential two-family zone. Consistent with the zoning plan, Greenway intended to construct six two-family homes. Prior to closing title, Greenway searched the public records and found a subdivision map, filed May 3, 1984, showing six two-family lots, and a site plan

approved by the Planning Board and Borough Engineer on April 19, 1981 with revisions of March 6, 1984, showing subdivided lots for the construction of a two-family house on each lot. The tax assessor confirmed that the lots were listed separately, that a two-family home was to be developed on each lot, and that the Planning Board had approved a resolution providing for drainage based on that approved use of the property.

The property to be conveyed under the Greenway contract previously had been part of a larger parcel, known as the Atrium Property, that was located partially within a business zone and partially within a residential two-family zone. The Paramus Planning Board passed a resolution on January 29, 1982, granting a zoning variance to permit construction of a four-story office building on that portion of the land located in the business zone. Under the same resolution, the portion of the land that was located in the residential zone, including that which Greenway contracted to purchase, was to be used only as a buffer area. For reasons not revealed in the appellate record, that resolution was not made part of the subdivision approval file. Thus, after Greenway made a diligent search of the property, closed the title to the property and sought construction permits to erect two-family homes on the site, its applications were denied by the Borough of Paramus (Paramus).

Greenway instituted the present litigation in the Law Division by filing a Verified Complaint in Lieu of Prerogative Writs pursuant to *Rule* 4:69. An Order to Show Cause was issued on December 16, 1997. The complaint contained three counts. Count One sought to compel Paramus to issue building permits for two-family homes on the property. Count Two asserted inverse condemnation, and Count Three alleged interference with prospective economic advantage by Paramus and various municipal officials. On December 22, 1997, the trial court denied plaintiffs' request to immediately direct the issuance of the permits, and instead remanded the matter to the Paramus Planning Board for clarification of the condition in the 1982 variance resolution requir-

ing that the "[residential] zone be used as a buffer only." On remand, the Planning Board determined, by resolution dated April 9, 1998, that it was intended that the residential portion remain undeveloped as a buffer between the office building and the surrounding residential area. Thereafter, Greenway filed an amended complaint adding the Planning Board as a defendant.

On May 5, 1998, Greenway filed a motion for summary judgment to compel Paramus to issue the requested building permits. The trial court found that prior to 1982 it was the Planning Board's intention to permit the property to be developed with two-family residential dwellings. The court explained that if Paramus and the Planning Board did not intend the site to be developed as described in the approved and filed plans, the information contained in the public record should have been corrected prior to Greenway's reliance on the public files. Accordingly, Paramus was directed to issue the requested building permits.

On November 4, 1998, Paramus and the Planning Board moved for summary judgment to dismiss the remaining two counts, which alleged inverse condemnation and interference with prospective economic advantage. Defendants argued that the order directing issuance of building permits rendered the claim for inverse condemnation moot, and the TCA's immunity for administrative actions precluded liability for interference with prospective economic advantage. Alternatively, defendants argued that Greenway had failed to establish the requisite elements of a claim for interference with prospective economic advantage. Greenway cross-moved for summary judgment.

The trial court dismissed the interference with prospective economic advantage count, finding that defendants were entitled to immunity under the TCA because of Greenway's failure to file a notice of claim, but granted Greenway's cross-motion for liability under the inverse condemnation claim because Paramus prevented Greenway from developing the property. The issues regarding the nature and extent of damages were reserved for a trial. The court found defendants had "denied plaintiffs economically viable

use of their land, and interfered with [their] reasonable investment-backed expectations in that use, resulting in a regulatory taking." The court held that Greenway was therefore entitled to fair compensation for the temporary taking that occurred between the initial denial of the permits until the court order compelling their issuance. The court found defendants caused delays that were beyond "normal" and "incidental," and thus, when defendants decided not to issue the building permits despite their previous actions regarding the property, they acted at their own peril. The court held that neither defendants' subsequent actions nor the 1982 resolution could override the Planning Board's original approval of the two-family home subdivision.

In denying defendants' motion for reconsideration of whether the TCA barred the inverse condemnation claim, the trial court considered itself bound by the holding in *Russo Farms, Inc. v. Vineland Bd. Of Educ.*, 280 *N.J.Super.* 320, 325, 655 *A.*2d 447 (App.Div.1995), *aff'd in part, rev'd in part,* 144 *N.J.* 84, 675 *A.*2d 1077 (1996), which held that compliance with the TCA's procedural notice requirements is not a prerequisite to pursuing inverse condemnation claims. The trial court noted that on review of *Russo Farms,* this Court declined to resolve the issue of whether the TCA applies to inverse condemnation actions but included a discussion of the approaches taken in other jurisdictions. *Russo Farms, supra,* 144 *N.J.* at 111–13, 675 *A.*2d 1077. The trial court found persuasive "those [out-of-state] cases cited by the Court [in *Russo Farms* ] holding that tort claims rules do not apply to inverse condemnation claims."

Defendants' motion for leave to appeal to the Appellate Division the issue of whether the TCA applies to inverse condemnation claims was denied. We granted defendants' motion for leave to appeal, 162 *N.J.* 658, 745 *A.*2d 1211 (1999), and now affirm the judgment of the Law Division.

## II.

■ Defendants argue that an "injury" under the TCA includes harm to constitutional rights, such as inverse condemnation, and

therefore, Greenway's claim is subject to the TCA's notice of claim provision. Injury is defined under the TCA as "[d]eath, injury to a person, damage to or loss of property or any other injury that a person may suffer." *N.J.S.A.* 59:1–3. Defendants maintain that because the notice of claim provision was not satisfied, all damage claims are barred for want of jurisdiction. Greenway, on the other hand, contends that an inverse condemnation is a taking, and not a tort within the meaning of the TCA. Hence, Greenway maintains it is entitled to damages for an unconstitutional taking that is not subject to the TCA.

A.

The TCA seeks to provide compensation to tort victims without unduly interfering with governmental functions and without imposing an excessive burden on taxpayers. *See N.J.S.A.* 59:2–1 cmt. The TCA states: "Except as otherwise provided by this act, a public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." *N.J.S.A.* 59:2–1a. This means that generally, immunity applies and "liability is the exception." *Fluehr v. City of Cape May,* 159 *N.J.* 532, 539, 732 *A.*2d 1035 (1999). Consistent with its goals of restricting governmental liability in tort, the TCA requires that a claim be presented to a public agency within ninety days after accrual of the cause of action. *N.J.S.A.* 59:8–8. Suit may be filed six months after the notice is given. *Ibid.* Two of the primary purposes advanced by the notice requirement are: (1) "to expedite investigation with the hope of reaching nonjudicial settlement"; and (2) "to protect the public entity's access to current information about the incident giving rise to the claim." *Reale v. Township of Wayne,* 132 *N.J.Super.* 100, 109, 332 *A.*2d 236 (Law Div.1975); *see Fuller v. Rutgers, The State University,* 154 *N.J.Super.* 420, 425–27, 381 *A.*2d 811 (App.Div.1977), *certif. denied,* 75 *N.J.* 610, 384 *A.*2d 840 (1978).

In an inverse condemnation action, a landowner is seeking compensation for a *de facto* taking of his or her property. *Pinkowski v. Township of Montclair*, 299 *N.J.Super.* 557, 575, 691 *A.*2d 837 (App.Div.1997); *Johnson v. County of Essex*, 223 *N.J.Super.* 239, 258, 538 *A.*2d 448 (Law Div.1987). "[A] property owner is barred from any claim to a right to inverse condemnation unless deprived of all or substantially all of the beneficial use of the totality of his property as the result of excessive police power regulation." *Pinkowski, supra,* 299 *N.J.Super.* at 575, 691 *A.*2d 837 (citations omitted). "[N]ot every impairment of value establishes a taking." *Ibid.* (citation omitted). "To constitute a compensable taking, the land owner must be deprived of all reasonably beneficial use of the property." *Ibid.; see also Washington Mkt. Enters. v. City of Trenton*, 68 *N.J.* 107, 118, 343 *A.*2d 408 (1975) (stating "[w]e have held upon several occasions that depriving an owner of undeveloped land of all beneficial use of that land for a significant period of time was a 'taking' ").

As Justice Holmes noted, even "a strong public desire to improve the public condition is not enough to warrant achieving the desire by a shorter cut than the constitutional way of paying for the change." *Pennsylvania Coal Co. v. Mahon*, 260 *U.S.* 393, 416, 43 *S.Ct.* 158, 160, 67 *L.Ed.* 322, 326 (1922). If there has been a taking, and defendants do not dispute that claim in this appeal, applicable are the guarantees of both the Just Compensation Clause of the Fifth Amendment of the United States Constitution, as applied to the states through the Fourteenth Amendment, and Article I, paragraph 20 of the New Jersey Constitution. Those provisions prohibit " '[g]overnment from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole.' " *In re Plan for Orderly Withdrawal*, 129 *N.J.* 389, 414, 609 *A.*2d 1248 (1992), *cert. denied*, 506 *U.S.* 1086, 113 *S.Ct.* 1066, 122 *L.Ed.*2d 370 (1993) (quoting *Armstrong v. United States*, 364 *U.S.* 40, 49, 80 *S.Ct.* 1563, 1569, 4 *L.Ed.*2d 1554, 1561 (1960)).

## B.

In support of their assertion that inverse condemnation is an injury within the meaning of the TCA, defendants rely on *Lloyd v. Borough of Stone Harbor*, 179 *N.J.Super.* 496, 512, 432 *A.*2d 572 (1981), in which the Chancery Division found that plaintiff's employment discrimination claim was barred by the TCA's notice of claim provision. The court noted that plaintiff's right to be protected from discriminatory practices is a property right, and that she had sued for interference with that right, claiming a "constitutional tort." *Id.* at 511, 432 *A.*2d 572. The court then considered whether the notice provision of the TCA applied to a suit alleging a constitutional violation. The court held that it did. *Id.* at 512, 432 *A.*2d 572; *see also Healey v. Township of Dover*, 208 *N.J.Super.* 679, 682, 506 *A.*2d 824 (App.Div.1986) (holding that claims of sexual harassment fall within the "expansive Tort Claims Act definition of 'injury' ").

The holdings in those two cases, however, were effectively overruled by this Court's decision in *Fuchilla v. Layman*, 109 *N.J.* 319, 337, 537 *A.*2d 652, *cert. denied*, 488 *U.S.* 826, 109 *S.Ct.* 75, 102 *L.Ed.*2d 51 (1988), which held that the notice provisions of the TCA do not apply to claims of discrimination under either 42 *U.S.C.* § 1983 or the New Jersey Law Against Discrimination. In *Fuchilla*, this Court considered the ambiguity inherent in the term "injury" under the TCA as well as the underlying legislative policies and histories of the TCA and the New Jersey Law Against Discrimination, and concluded that discrimination did not constitute such an "injury" within the intendment of the TCA. *Id.* at 335–39, 537 *A.*2d 652.

Although the issue in this case involves inverse condemnation rather than employment discrimination, we conclude nonetheless that defendants' reliance on *Lloyd* and *Healey* for the proposition that the notice of claim provision of the TCA applies to "constitutional torts" is misplaced. *Russo Farms* had been decided by the Appellate Division nearly three years before the complaint in the present case was filed. That court held that the TCA does not

apply to inverse condemnation actions. *Russo Farms, supra,* 280 *N.J.Super.* at 325, 655 *A.2d* 447. This Court's opinion in *Russo Farms* had also been rendered before the present complaint was filed. In that opinion, we did not overturn or disapprove of that portion of the Appellate Division's holding that is relevant to the present case. The Court simply declined to decide the issue because it had not been raised by the parties. *Russo Farms, supra,* 144 *N.J.* at 113, 675 *A.2d* 1077. However, we observed that other jurisdictions agreed with the Appellate Division's conclusion. *Ibid.*

To the extent that an inverse condemnation is a "constitutional tort," it is more akin to an action in lieu of prerogative writs seeking "to review the reasonableness of municipal action resulting in the diminution of property values and to recover damages for such action," *Harisadan v. City of East Orange,* 187 *N.J.Super.* 65, 69, 453 *A.2d* 888 (App.Div.1982), than the tort of negligence. Indeed, plaintiffs in this case contend the TCA's notice provisions conflict with the requirements of an action in lieu of prerogative writs because requiring compliance with the TCA would force them to abandon their right to file a prerogative writ action challenging the municipality's denial of the building permits.

The primary remedy sought in this case was an order directing the issuance of building permits. The request for damages was ancillary to the primary relief sought but had to be joined in the complaint to avoid the preclusive effect of *Rule* 4:27–1 and *Rule* 4:30A. *Rule* 4:69–6 requires a prerogative writs action to be filed within "45 days after the accrual of the right." The TCA notice of claim provision requires notice to be filed within ninety days after the accrual of the cause of action. *N.J.S.A.* 59:8–8. Suit may not be instituted until the expiration of six months from the date notice of claim was received. *Ibid.* Therefore, when the Rules and statute are viewed together, it becomes apparent that the forty-five day period in which to commence a prerogative writs action conflicts with *N.J.S.A.* 59:8–8, if applicable, because the

forty-five day filing period of *Rule* 4:69–6 would necessarily expire during the six-month waiting period of *N.J.S.A.* 59:8–8.

In any event, if *N.J.S.A.* 59:8–8 was applicable, by filing the complaint within forty-five days after the denial of the permits, Paramus was promptly notified of the claim for which damages were sought, thereby providing substantial compliance with the purpose of the TCA's notice provision. We base our decision, however, on the fact that there are compelling reasons why the TCA's notice provisions are not applicable to this type of case.

■ "The primary focus of the [TCA] is on negligence and similar tortious conduct impliedly involving fault." *Fuchilla, supra,* 109 *N.J.* at 338, 537 *A.*2d 652 (Handler, J., concurring). Clearly that is what the Legislature intended when it stated that "it is hereby declared to be the public policy of this State that public entities shall only be liable for their negligence within the limitations of this act." *N.J.S.A.* 59:1–2. The TCA otherwise prominently refers to a "negligent or wrongful act." *See, e.g., N.J.S.A.* 59:3–9; *N.J.S.A.* 59:4–2a. Recently, we observed that the title to the TCA and its legislative history "demonstrate[ ] that it was intended to apply only to civil actions seeking damages for tortious conduct." *Chasin v. Montclair State University,* 159 *N.J.* 418, 428, 732 *A.*2d 457 (1999). Fault or lack of reasonable care, essential to the tort of negligence, simply are not involved in the concept of inverse condemnation. Inverse condemnation is similar to a products liability manufacturing defect case in that the plaintiff in both types of cases is not required to prove fault. *Myrlak v. Port Auth. of N.Y. and N.J.,* 157 *N.J.* 84, 96, 723 *A.*2d 45 (1999).

Similarly important is the fact that the TCA was the Legislature's response to the Court's abrogation of the State's sovereign immunity in *Willis v. Department of Conservation and Econ. Dev.,* 55 *N.J.* 534, 264 *A.*2d 34 (1970). All of the cases cited by the Court in *Willis* as examples of where the sovereign immunity defense had not been allowed involved claims of negligence. *Id.* at 540, 264 *A.*2d 34. The fact that all of the cases focused on

negligence strongly suggests that the Legislature never intended inverse condemnation to be covered by the TCA's definition of "injury." We, therefore, are persuaded that the TCA "disavows any remedial purpose to vindicate societal interests ... or to protect any individual constitutional interest or civil right." *Fuchilla, supra,* 109 *N.J.* at 344, 537 *A.*2d 652 (Handler, J., concurring).

Today, we resolve the issue that we did not decide in our *Russo Farms* opinion. We hold that inverse condemnation is not a tort or an "injury" within the meaning of the TCA, for which the notice of claim provision is applicable. An inverse condemnation action should proceed unencumbered by the TCA.

A majority of jurisdictions that have addressed the issue have come to the same conclusion. *See, e.g., Odello Bros. v. County of Monterey,* 63 *Cal.App.*4th 778, 785–86, 73 *Cal.Rptr.*2d 903 (Ct.App. 1998) (holding Tort Claims Act inapplicable to action for inverse condemnation because action is not considered to sound in tort); *Young v. Palm Beach County,* 443 *So.*2d 450, 452 (Fla.Dist.Ct. App.1984) (referring to relief sought under claim for inverse condemnation as "the equitable remedy of requiring the government to condemn the property taken and pay compensation therefor"); *Baumler v. Town of Newstead,* 198 *A.D.*2d 777, 604 *N.Y.S.2d* 372, 373 (App.Div.1993) (holding "the provisions of [the New York Tort Claims Act] do not apply to a cause of action asserted against a town for inverse condemnation."); *Borntrager v. County of Delaware,* 76 *A.D.*2d 969, 428 *N.Y.S.*2d 766, 767 (App.Div.1980) (holding *de facto* condemnation of land that resulted in permanent appropriation was not a tort and thus, was not subject to notice requirements).

### III.

We are also persuaded that the notice provision of the TCA does not apply to inverse condemnation claims because they allege, in a state court proceeding, a violation of the Just Compensation Clause of the Fifth Amendment. That amendment provides

that "private property [shall not] be taken for public use, without just compensation." That constitutional prohibition against unconstitutional takings is self-executing, in the sense that such claims arise independently of the TCA. Additionally, "statutes [cannot] abrogate constitutional rights." *Lerman v. City of Portland,* 675 *F.Supp.* 11, 15 (D.Me.1987), *aff'd,* 879 *F.*2d 852 (1 st Cir.), *cert. denied,* 493 *U.S.* 894, 110 *S.Ct.* 243, 107 *L.Ed.*2d 193 (1989).

We also rely on *Felder v. Casey,* 487 *U.S.* 131, 108 *S.Ct.* 2302, 101 *L.Ed.*2d 123 (1988), to reach the same conclusion. *Felder* held that a state's notice of claim provision in a tort claims act does not apply to an action brought in state court alleging violations of federal constitutional rights under 42 *U.S.C.A.* § 1983. *Id.* at 138, 108 *S.Ct.* at 2307, 101 *L.Ed.*2d at 137–38. Even before *Felder* was decided, this Court had held that the notice provision of the TCA did not apply to a Section 1983 claim. *Fuchilla, supra,* 109 *N.J.* at 337–38, 537 *A.*2d 652.

■ Other courts have similarly interpreted *Felder* to render state notice-of-claim laws inapplicable in actions alleging violations of federal as well as state constitutional rights, such as claims of inverse condemnation. *See, e.g., Moore Real Estate, Inc. v. Porter County Drainage Bd.,* 578 *N.E.*2d 380, 381 (Ind.Ct.App.1991) (citing *Felder,* court held that governmental agency "may not use . . . the tort claims act, to trump the constitutional rights of [a land owner]" to compensation for constructive taking); *Wolff v. Secretary of S.D. Game, Fish & Parks Dep't,* 544 *N.W.*2d 531, 535, (S.D.1996) (citing *Felder* in refusing to apply tort notification requirements to Section 1983 claim and holding that inverse condemnation claim "is not grounded in tort" but "proceeds from a [state] constitutional right," and thus, "under the explicit provisions of [the South Dakota Constitution, requires] no notice of injury"). A public entity may not use a state statute, such as the TCA, to abrogate a claimant's constitutional rights. *Russo Farms, supra,* 144 *N.J.* at 113, 675 *A.*2d 1077 (quoting *Moore Real Estate, supra,* 578 *N.E.*2d at 381).

## IV.

The judgment of the Law Division is affirmed. The matter is remanded to the Law Division for further proceedings "to provide compensation for the period during which the taking was effective." *First English Evan. Luth. Church v. County of Los Angeles,* 482 *U.S.* 304, 321, 107 *S.Ct.* 2378, 2389, 96 *L.Ed.*2d 250 (1987). "[T]he property owner [is] owed fair compensation for [the] temporary taking." *East Cape May Assocs. v. Department of Envtl. Protection,* 300 *N.J.Super.* 325, 342, 693 *A.*2d 114 (App. Div.1997).

*For affirmance and remandment*—Chief Justice PORITZ and Justices O'HERN, COLEMAN, LONG, VERNIERO and LaVECCHIA—6.

*Opposed*—None.