**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1040-19

MICHAEL BESSASPARIS and
SHT CORP., t/a SOMERSET
HILLS TOWING,

     Plaintiffs-Appellants,

v.

THE TOWNSHIP OF
BRIDGEWATER, POLICE
OFFICER JASON DAUNTON,
POLICE LIEUTENANT PAUL
PAYNE, and FORMER CHIEF
OF POLICE, MANUEL
CARAVELA,

     Defendants-Respondents.

_____

Submitted February 2, 2021– Decided May 6, 2021

Before Judges Fisher, Moynihan, and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-1419-17.

William J. Pollinger, attorney for appellants.

Savo, Schalk, Gillespie, O'Grodnick & Fisher, P.A., attorneys for respondents (Michael P. O'Grodnick, on the brief).

PER CURIAM

Having pleaded causes of actions sounding in constitutional and civil-rights violations stemming from a denial of a towing license and alleged violations of a towing ordinance, plaintiffs appeal orders granting defendants' summary-judgment motions and denying plaintiffs' reconsideration and reinstatement motions. Because the court erred in its application of tort-claim immunities and statute-of-limitations law, we reverse.

I.

The Township of Bridgewater adopted an ordinance "to protect property and persons who operate motor vehicles inside the [t]ownship" and "to ensure proper licensing, storage, availability and other controls over persons and firms licensed to provide wrecker service." Bridgewater, N.J., Code § 216-2 (2006). Anyone "who wishes to engage in municipal towing at public request, from the official towing list," must obtain a license in accordance with the application process set forth in the code. Id. §§ 216-3 to -4. Anyone who obtains a license must comply with the "rules and regulations as well as with all provisions" of chapter 216 of the code, id. § 216-13, including provisions that establish towing

2

and storage fees and require licensees to maintain "adequate and complete records" of "all fees charged and collected," id. §§ 216-9 and 10(L). The township's police department is responsible for enforcement of these provisions, and the chief of police is authorized to establish and enforce "reasonable rules and regulations for wreckers . . . for the safety, well-being, and protection" of citizens and their property within the township. Id. § 216-13.

On December 13, 2012, SHT Corp. submitted a renewal "application for wrecker roster" for 2013 pursuant to section 216-4, identifying itself as "SHT Corp. t/a Somerset Hills Towing" and listing as its owner Michael Bessasparis, who signed the application. The township granted SHT a license and placed SHT on its approved wrecker roster for 2013. The following year, SHT submitted a renewal application, again identifying itself as "SHT Corp. t/a Somerset Hills Towing" and listing as its owner Bessasparis, who signed the renewal application. The township renewed the license and placed SHT on its approved wrecker roster for 2014.

In a complaint-summons dated March 4, 2014, Officer Jason Daunton, who was the "complaining witness," accused Bessasparis of violations of section 216-9. He alleged in 261 counts that, from January 2013 to December 2013,

Bessasparis had overcharged customers by collecting $15,652.60 in fees unauthorized by section 216-9.

On August 25, 2014, Officer Paul Payne was the complaining witness on another complaint-summons for similar violations against Bessasparis, alleging he improperly overcharged customers $672 in January 2014.

Payne testified that the complaint-summonses had been issued to Bessasparis as a result of an investigation of all towing companies licensed by the township that was initiated after a complaint of overcharging by another towing company. According to Payne, his usual practice in any criminal enforcement was to name an individual, not a corporation, to make sure someone appeared in court. Payne testified about a meeting with then Chief of Police Manuel Caravela and they agreed, based on legal advice, that complaint-summonses should be issued to the owners of the violating tow companies.

> Caravela testified and confirmed Payne's testimony, stating that after one towing company had been found to be in violation of the ordinance, he had ordered that every tow company be investigated. He also testified that it was standard policy to charge a business owner individually rather than a corporation.

A-1040-19

On September 26, 2014, a warrant for Bessasparis's arrest was issued; he testified, however, he was arrested for failing to appear in response to the complaint-summonses. He posted bail and was released.

On December 10, 2015, after four days of trial and the conclusion of the State's case, the municipal court granted Bessasparis's motion to dismiss the complaints against him, finding the State had not met its burden of proving beyond a reasonable doubt that Bessasparis had violated any of the sections of chapter 216. The court issued orders of dismissal on January 6, 2016.

Chapter 216 was amended on November 6, 2014. See Bridgewater, N.J., Code ch. 216 (2014). Under the amended chapter, an application for a wrecker-service license must be submitted to the chief of police, who is required to investigate whether the information in the application is accurate and whether the applicant meets the enumerated requirements. Id. §§ 216-5 to -6. The chief of police is required after his investigation to make a recommendation to the mayor for approval or disapproval of the application and to state the reasons for any recommended disapproval. Id. § 216-7(A). On a favorable recommendation, the mayor "shall approve the license and the applicant's name will be placed at the end of the towing list." Id. § 216-7(B). Section 216-7(D) allows the chief of police "in his discretion, [to] make a determination to

temporarily deny, suspend or revoke the license, pending the outcome of an appeal" under certain circumstances, including when the chief is "not satisfied, based on compliance with this chapter and [section] 216-11 in particular, with the services of the operator and/or employees or with the cooperation the [t]ownship or the owner/driver of the towed motor vehicle has received in rendering such services." Id. § 216-7(D)(3).

On December 31, 2015, "Somerset Hills Towing" submitted a renewal application for inclusion on the township's 2016 wrecker roster, listing as its owner Bessasparis. On January 26, 2016, pursuant to section 216-7(A), Chief Caravela issued to the mayor and others a "Recommendation for Denial of Towing License for Somerset Hills Towing for Calendar year 2016," stating he recommended denying the license "based on the numerous violations to our [t]ownship [o]rdinance since 2013." He acknowledged the 2013 and 2014 complaints issued against Bessasparis had been dismissed on December 10, 2015, but asserted the court dismissed them "purely on a technicality and not on the merits of the case," with the court having found "the complaints should have been signed against [SHT] not Michael Bessasparis, individually."

On January 28, 2016, Caravela sent a letter to "Somerset Hills Towing" addressed to Bessasparis, advising that its license application had been denied

pursuant to section 216-7(D)(3) of the code. He attached a memorandum identifying as the "reasons for denial" the alleged 2013 and 2014 overcharge violations.

Pursuant to section 216-8, SHT appealed the denial. A hearing officer appointed by the mayor conducted hearings on the appeal on May 25, 2016, and June 13, 2016. At the conclusion of the June 13 hearing, the hearing officer indicated the proceedings would continue, but the record before us contains no additional transcripts, order from the hearing officer, or documentation of what happened in the appeal after the June 13 hearing.[1]

On November 17, 2017, SHT and Bessasparis filed a multi-count complaint against the township, Daunton, Payne, and Caravela based on the complaint-summonses issued by Daunton and Payne against Bessasparis and a denial of SHT's application for a 2016 towing license, alleging intentional-act tort and violations of plaintiffs' constitutional and civil rights entitling plaintiffs to damages, citing 42 U.S.C. § 1983 and the New Jersey Civil Rights Act (NJCRA), N.J.S.A. 10:6-1 to -2.

---

[1] In the complaint plaintiffs alleged the hearing officer "as 2016 had expired . . . concluded the hearing by determining that the issue had become moot as the result of the lapse of time." In their answer defendants denied that allegation.

In an order dated October 17, 2018, the court granted defendants' motion for partial summary judgment, dismissing with prejudice the third, fourth, fifth, sixth, seventh, and eighth counts of the complaint as to all defendants and the tenth count as to the township "to the extent it seeks to impose liability for the claims set forth in the [f]irst and [s]econd count of the [c]omplaint." In an October 17, 2018 written decision, the court explained it was granting summary judgment as to the seventh and eighth counts of the complaint[2] because "the immunities set forth in the Tort Claims Act [N.J.S.A. 59:1-1 to 12-3 (the TCA)] apply," citing N.J.S.A. 40:48-2.49, a statute that allows a municipality to regulate by ordinance vehicle-towing operations and quoting from N.J.S.A 59:2-5, the portion of the TCA that makes a public entity "not liable for an injury caused by . . . the failure or refusal to issue . . . any permit, license, . . . or similar authorization where the public entity or public employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended

---

[2] In the seventh count, plaintiffs alleged Caravela had violated SHT's rights by denying its 2016 application and Daunton by failing to appear at the appeal hearing, citing the Fourth and Fifth Amendments of the United States Constitution, 42 U.S.C § 1983, and the NJCRA. In the eighth count, plaintiffs alleged the township was liable for "all decision making by the Police Department and Chief of Police," specifically referencing the "discriminatory and exclusionary implementation of the provisions of" chapter 216 of the code and citing 42 U.S.C. § 1983.

or revoked."  The court held that "[a]s to Counts One and Two, [the township] is entitled to summary judgment and should be dismissed for the reasons stated above,"[3] presumably the TCA, and "the Tenth Count shall be dismissed as it seeks to impose liability for the claims set forth in the First and Second Counts."[4] Citing N.J.S.A. 59:2-10, the court stated "[r]espondeat superior applies to claims that involve an employee's commission of a crime or actual malice, and immunizes [the township] from liability."  The court granted summary judgment as to "[p]laintiff's civil rights claims,"[5] finding the statute of limitations required

---

[3]  In the first count, plaintiffs claimed by denying SHT's license application Caravela had engaged in an "intentional act" to injure SHT and had violated "N.J.S.A. 26:30-2," presumably meaning N.J.S.A. 2C:30-2, a criminal statute regarding official misconduct by a public servant.  In the second count, plaintiffs alleged Payne had maliciously prosecuted Bessasparis, citing the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983.  The court found the township was entitled to summary judgment on those counts even though defendants had not sought that relief.

[4]  In the tenth count, plaintiffs asserted defendants were "jointly and severally liable for violations of plaintiffs' civil and constitutional rights" based on "their conduct enumerated in the [f]irst through [n]inth [c]ounts."

[5]  The court did not specify which claims it considered to be "[p]laintiff's civil rights claims."  The remaining counts dismissed by the court were the third through sixth counts of the complaint.  In the third count, plaintiffs alleged Caravela had violated Bessasparis's constitutional rights by approving Payne's complaint-summonses, citing 42 U.S.C. § 1983.  In the fourth count, plaintiffs claimed Payne and Caravela had violated Bessasparis's rights based on the allegations made in the second and third counts, citing the NJCRA.  In the fifth

plaintiffs to file those claims in September 2016, two years after Payne filed his complaint-summons.  On December 7, 2018, the court denied plaintiffs' motion for reconsideration.

In an August 2, 2019 order, the court denied plaintiffs' motion to reinstate the third and fourth counts of the complaint, for leave to amend the complaint, for the production of information, and to extend discovery, finding the proposed amendments to be futile and no basis to reconsider its prior decision to grant summary judgment as to the third and fourth counts.

Defendants subsequently filed another motion for summary judgment. Without hearing oral argument, the court in a September 27, 2019 order granted that motion and dismissed the complaint with prejudice.  In an October 4, 2019 written opinion, the court granted summary judgment as to the first, second, and

---

count, plaintiffs alleged Daunton by his complaints and Caravela by his approval of those complaints had violated Bessasparis's due-process rights under the Fourth and Fifth Amendments of the United States Constitution, citing 42 U.S.C. § 1983.  In the sixth count, plaintiffs claimed that the complaints signed by Daunton and Payne and approved by Caravela had violated Bessasparis's rights under the Fifth Amendment of the United States Constitution, citing 42 U.S.C. § 1983.  Presumably, the court meant those claims as well as the § 1983 and NJCRA claims in the seventh and eighth counts.

A-1040-19

ninth counts[6] of the complaint. The court held that TCA immunities applied, citing N.J.S.A 40:48-2.49 and quoting N.J.S.A. 59:2-5. As to the second count, the court also held that Payne[7] had immunity pursuant to N.J.S.A. 59:3-3, which provides that a "public employee is not liable if he acts in good faith in the execution or enforcement of any law," and N.J.S.A. 59:3-8, which provides that "a public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding." The court incorrectly characterized the first count as "deal[ing] with the filing of [m]unicipal [c]ourt complaints in 2014" and held it was barred by "the two-year statute of limitations." Again referencing but not identifying "[p]laintiffs' civil rights claims," the court held the statute of limitations barred those claims, finding that plaintiffs had to file those claims by September 2016 given the filing of the complaint-summonses in 2014.

On appeal plaintiffs argue that their malicious-prosecution claims were not time-barred because the cause of action did not accrue until the municipal

---

[6] In the ninth count, plaintiffs alleged defendants "selectively enforced the provisions of the Ordinance in an exclusionary and discriminatory manner," in violation of Bessasparis's equal-protection rights under the Fifth Amendment of the United States Constitution, citing 42 U.S.C. § 1983, and the NJCRA.

[7] The court did not make a similar finding as to Daunton, whom plaintiffs specifically included in the ninth count.

11

court dismissed the complaint-summonses on January 6, 2016; because those claims were not time-barred, the court erred in granting summary judgment on the second, third, fourth, fifth, sixth, and tenth counts; and defendants were not entitled to immunity under the TCA because plaintiffs' constitutional claims are governed by federal law, not the TCA.

In response, defendants argue plaintiffs misconstrue the court's decisions and their own causes of action, asserting the court did not dismiss malicious-prosecution claims based on the statute of limitations but on substantive grounds, specifically that plaintiffs failed to demonstrate malice, lack of probable cause, deprivation of liberty, or unreasonable search and seizure; the civil-rights claims that were dismissed on statute of limitations grounds did not sound in malicious prosecution; the court did not apply TCA immunities to plaintiffs' § 1983 claims but only to state and common-law claims; plaintiffs did not actually plead the claims they seek to have revived; and the constitutional claims were time-barred.

## II.

We review a trial court's grant of summary judgment "de novo under the same standard as the trial court." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 199 (2016). We apply the standards

of <u>Brill v. Guardian Life Insurance Co. of America</u>, 142 N.J. 520, 540 (1995), and <u>Rule</u> 4:46-2. The question is whether the evidence, when viewed in a light most favorable to the non-moving party, raises genuinely disputed issues of fact sufficient to warrant resolution by the trier of fact, or whether the evidence is so one-sided that one party must prevail as a matter of law. <u>Brill</u>, 142 N.J. at 540.

We begin by noting that neither plaintiffs' complaint nor the trial court's written decisions are paragons of clarity or precision, as demonstrated by the parties' disagreement as to what plaintiffs pleaded and what the court decided. One thing is clear to us:  contrary to defendants' assertion, the trial court did not perform a "substantive" analysis of plaintiffs' causes of actions but instead dismissed them with prejudice because the court believed either or both the TCA or statute of limitations barred them.  For example, the trial court recited the elements of a malicious-prosecution claim:  (1) the defendant instituted a criminal action against the plaintiff; (2) the action was actuated by malice; (3) there was an absence of probable cause; and (4) the criminal action was terminated favorably to the plaintiff.  <u>Brunson v. Affinity Fed. Credit Union</u>, 199 N.J. 381, 393-94 (2009).  But the court did not decide whether plaintiffs had established any of those elements.  Accordingly, we examine whether the court properly applied its stated reasons for its summary-judgment decisions (the TCA

and statute of limitations) to the types of claims plaintiffs pleaded (intentional tort, § 1983, and NJCRA claims) considering the bases of those claims (the complaint-summonses and the license denial).

A.

The court granted summary judgment as to the first, second, and seventh through tenth counts of plaintiffs' complaint based in part on its finding that N.J.S.A 59:2-5 provided defendants with licensing immunity from those claims. The court held that Payne also had immunity pursuant to N.J.S.A. 59:3-3 and -8 from the § 1983 claim in the second count.

On its face, N.J.S.A. 59:2-5 is inapplicable to plaintiffs' causes of action that do not relate to the license denial. Thus, the court erred in applying the TCA's licensing immunity to the second count, which is premised on Payne's complaint-summons; the eighth count, to the extent the allegations in that count relate to the complaint-summonses; and the ninth count, which is premised on Daunton's and Payne's complaint-summonses.[8]

The court erred in applying TCA immunities to plaintiffs' constitutional and civil-rights claims. Except for the claim in the first count, plaintiffs pleaded

---

[8] We do not separately address the tenth count because the "joint and several[]" liability pleaded in that count is premised on the other counts in the complaint.

their claims as rights violations actionable under § 1983 or the NJCRA, not as negligent or tortious acts. For example, in the seventh count, plaintiffs do not allege that Caravela was negligent in denying SHT's application; they allege that in denying the application, he violated SHT's constitutional rights. The culpable act was not the denial of the license but the alleged infringement of constitutional rights. See Ball, 207 N.J. Super. at 110-11 (holding N.J.S.A. 59:2-5 immunity did not apply because culpable act was not the issuance of the permit but was creation and maintenance of dangerous condition).

"The TCA indisputably governs causes of action in tort against governmental agencies within New Jersey," Gomes v. Cnty. of Monmouth, 444 N.J. Super. 479, 487 (App. Div. 2016), including causes of action asserting intentional torts, Velez v. City of Jersey City, 180 N.J. 284, 293 (2004). The TCA does not govern § 1983 or NJCRA claims. See Owens v. Feigin, 194 N.J. 607, 609 (2008) (holding TCA's notice provisions do not apply to plaintiffs' NJCRA claims); Velez, 180 N.J. at 296 (finding the TCA applied because plaintiff had pleaded "basic common law tort claims" and had not "assert[ed] any state or federal constitutional rights"); Fuchilla v. Layman, 109 N.J. 319, 331 (1988) (holding TCA's notice provisions do not apply to § 1983 claims); Hayes v. Mercer, 217 N.J. Super. 614, 619 (App. Div. 1987) ("state law

15

immunities do not protect public employees and their employers from § 1983 claims").

Courts have applied the TCA immunities at issue in this case to tort-based claims, not claims based on civil or constitutional rights. See Wildoner v. Borough of Ramsey, 162 N.J. 375, 387 (2000) (applying N.J.S.A 59:3-3 immunity to common-law tort claims, not § 1983 claims); Malloy v. State, 76 N.J. 515, 521 (1978) (finding purpose of licensing immunity "is to protect the [State's] licensing function and permit it to operate free from . . . the threat of tort liability"); Pinkowski v. Twp. of Montclair, 299 N.J. Super. 557, 570 (App. Div. 1997) (applying licensing immunity to "claims alleging negligent issuance of minor subdivision approval"); Gurski v. N.J. State Police Dep't, 242 N.J. Super. 148, 162 (App. Div. 1990) (N.J.S.A. 59:3-3 immunity applied to tort-based claims, not § 1983 claims); Ball v. N.J. Bell Tel. Co., 207 N.J. Super. 100, 110 (App. Div. 1986) (noting courts consistently applied licensing immunity "to protect public entities against tort liability"); Mc Gowan v. Borough of Eatontown, 151 N.J. Super. 440, 449-450 (App. Div. 1977) (applying N.J.S.A. 59:2-5 immunity in personal-injury case).

Courts consistently have rejected the application of TCA immunities to constitutional claims because "[a] public entity may not use a state statute, such

as the TCA, to abrogate a claimant's constitutional rights." Greenway Dev. Co. v. Borough of Paramus, 163 N.J. 546, 558 (2000). As the Court recognized in Velez, "state or federal constitutional rights . . . supercede [the] statutory limitations" of the TCA. 180 N.J. at 296. We hold that the court erred in applying TCA immunities to the § 1983 and NJCRA claims plaintiffs pleaded in the second, seventh, eighth, and ninth counts of the complaint.

That leaves the tort-based claim of first count of the complaint. In the first count, plaintiffs alleged that by denying SHT's application for a license, Caravela engaged in an "intentional act, solely for the purpose of injuring SHT." Plaintiffs do not allege any rights violations in the first count and do not cite either § 1983 or the NJCRA in that count but instead assert an intentional tort. The allegations are premised directly on injuries flowing from a denial of a license. Thus, the licensing immunities found by the court potentially apply to the first count of the complaint.

The court, however, failed to consider N.J.S.A 59:3-14, which provides in subpart (a) that "[n]othing in [the TCA] shall exonerate a public employee from liability if it is established that his conduct was outside the scope of his employment, or constituted a crime, actual fraud, actual malice or willful misconduct." Plaintiffs alleged in the first count that Caravela violated N.J.S.A.

2C:30-2, a crime of official misconduct by a public servant. Pursuant to N.J.S.A. 59:3-14, if it can be shown that Caravela's actions constituted a crime or willful misconduct, he is not entitled to immunity under the TCA. See Leang v Jersey City Bd. of Educ., 198 N.J. 557, 583-84 (2009); Kelly v. Cnty. of Monmouth, 380 N.J. Super. 552, 562 (App. Div. 2005). Because the court failed to consider N.J.S.A. 59:3-14, we conclude the court erred in dismissing the first count based on licensing immunity.

We note the court also failed to address – perhaps because the issue wasn't raised – whether the doctrine of qualified immunity applied to plaintiffs' § 1983 or NJCRA claims. In a case involving § 1983 and NJCRA claims, our Supreme Court recognized that the "doctrine of qualified immunity shields law enforcement officers from personal liability for civil rights violations when the officers are acting under color of law in the performance of official duties" unless their performance was not "objectively reasonable." Morillo v. Torres, 222 N.J. 104, 107-08 (2015); see also Leang, 198 N.J. at 579-80 (applying "federal qualified immunity" to "plaintiff's federal claims"); Wildoner, 162 N.J. at 385-387 (discussing application of qualified immunity in § 1983 case); Bayer v. Twp. of Union, 414 N.J Super. 238, 261 (App. Div. 2010) (acknowledging a

18

government official may be entitled "to qualified immunity from liability for civil damages under § 1983").

Although we find that the trial court erred in its application of TCA immunities, we recognize that the matter is better left open for further consideration by the parties and the trial court of the possible application of federal qualified immunities and N.J.S.A. 59:3-14. We do not foreclose the possibility that other evidence might be available and presented to the trial court that would permit the court to consider and render a summary-judgment decision concerning these issues as well as substantive considerations of whether plaintiffs have established the elements of their causes of action. We intimate no view as to the outcome of any future motion.

## B.

With a broad brush and with no citation to any particular statute of limitation and no determination as to when plaintiffs' individual causes of action actually accrued, the trial court dismissed with prejudice the counts of plaintiffs' complaint, using the same conclusory language in each summary-judgment decision: because plaintiffs' "actions involve the filing of [m]unicipal [c]ourt complaints in 2014, [p]laintiff would have had to file his [c]omplaint by September 2016." We disagree.

A-1040-19

"Every § 1983 claim is subject to the statute of limitations applicable to personal injury claims in the state where the cause of action arose." Heyert v. Taddese, 431 N.J. Super. 388, 435 (App. Div. 2013). N.J.S.A. 2A:14-2 requires a personal-injury plaintiff to file suit within two years from the accrual of the cause of action. Ibid. Although state law determines the limitations period, federal law governs the accrual of a § 1983 action. Ibid. Generally, "a § 1983 cause of action begins to accrue when the plaintiff knows, or has reason to know, of the injury on which the action is based." Ibid.; see also 3085 Kennedy Realty Co. v. Tax Assessor of Jersey City, 287 N.J. Super. 318, 323-24 (App. Div. 1996) (§ 1983 claim accrues when a plaintiff knows or should know about a violation of his or her constitutional rights). The statute of limitations for a malicious-prosecution claim under § 1983 accrues on the day that the criminal proceedings were terminated in the plaintiff's favor. McDonough v. Smith, ___ U.S. ___, 139 S. Ct. 2149, 2154-57 (2019).

Like § 1983 claims, the timeliness of NJCRA claims is governed by the two-year statute-of-limitation period of N.J.S.A. 2A:14-2(a). Lapolla v. Cnty. of Union, 449 N.J. Super. 288, 298 (App. Div. 2017). A two-year limitation period also generally applies to intentional torts. N.J.S.A. 2A:14-2(a) (applying

two-year limitation period to actions for "an injury to the person caused by the wrongful act" of another); see also Tevis v. Tevis, 79 N.J. 422, 425 (1979).

In the second through sixth counts of the complaint, plaintiffs pleaded malicious-prosecution claims under § 1983 or the NJCRA.  Plaintiffs may not have used the phrase "malicious prosecution" in each of those counts, but it is clear that those causes of actions are based on Daunton's and Payne's allegedly wrongful institution of criminal actions against Bessasparis.  Those causes of action accrued on January 6, 2016, the day the municipal court issued orders of dismissal of the complaint-summonses.  Having filed the complaint on November 17, 2017, plaintiffs initiated these claims within the applicable two-year limitation period.  The court erred in finding these claims had to be filed by September 2016.

Plaintiffs base their claims in the first and seventh counts on Caravela's denial of SHT's 2016 license application, not, as the court incorrectly stated, on "the filing of [m]unicipal [c]ourt complaints in 2014."  Caravela's denial letter was dated January 28, 2016.  It is not clear from the record how or when SHT's appeal was resolved.  The court erred in finding these claims had to be filed by September 2016.

A-1040-19

In the eighth count, plaintiffs alleged defendants had engaged in "discriminatory and exclusionary implementation" of the provisions of chapter 216, referencing "all the decision making by the Police Department and Chief of Police" and citing 42 U.S.C. § 1983. In the ninth count, plaintiffs alleged defendants had "selectively enforced" the provisions of chapter 216, referencing the complaint-summonses and citing § 1983 and the NJCRA. Those claims accrued when plaintiffs knew or should have known about those alleged violations of their rights. See 3085 Kennedy Realty Co., 287 N.J. Super. at 323-24. The court made no finding as to when plaintiffs knew or should have known about those alleged violations but rotely applied the approximate date when defendants filed the complaint-summonses. Having failed to determine when these causes of action accrued, the court erred in finding these claims untimely.

III.

In sum, we find that the court erred in granting summary judgment based on tort-claims immunities and a statute of limitation period that purportedly ended in September 2016. Accordingly, we reverse the court's summary-judgment orders. Having reversed those orders, we need not reach plaintiffs' appeal of the court's denial of plaintiffs' reconsideration and reinstatement motions.

22

Reversed and remanded for proceedings consistent with this opinion.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION